Commonwealth ex rel. *v.* Daven (et al., Appellant).

Argued November 26, 1929. Before FRAZER, WALL-ING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

417

*Thomas Boylan,* with him *Samuel W. Salus,* for appellant.—The record from the Juvenile Court of Buncombe County, North Carolina, was not admissible in evidence: Kean v. Rice, 12 S. & R. 203; Snyder v. Wise, 10 Pa. 157; State v. Hinchman, 27 Pa. 479.

The case should have been heard de novo.

*Franklin E. Barr,* Assistant District Attorney, with him *George Pennell,* of Asheville, N. C., and *John Monaghan,* District Attorney, for appellee.—How would it be possible for the Municipal Court of Philadelphia to hear this case de novo? The father is not a resident of Philadelphia and was not before the court. He is not a party to this record. The court could consequently not have jurisdiction of his person and any decree which it might enter could not be binding. We agree that, were both parents before the municipal court, the case should be heard de novo, following the ruling in Com. v. Sage, 160 Pa. 399.

OPINION BY MR. JUSTICE WALLING, January 6, 1930:

In 1927, G. Wallace Bryant and Margaret M. Bryant, his wife, were residents of Asheville, Buncombe County, North Carolina. They had separated and he, being tu-

bercular, was living in a sanatorium. Their two daughters, Marjorie and Frances, aged respectively four and six years, were with their mother. In the spring of that year, at the instance of the father, the children were brought before the juvenile court of that county on the charge that they were neglected and that the mother, by reason of immoral conduct, was unfit to have their custody. The juvenile court is a branch of the Superior Court of North Carolina, of which Hon. CARL B. HYATT was the sole judge for that county. After several informal hearings, of which the mother was notified and appeared personally and by counsel, the judge made a written adjudication placing the children in a boarding house or home where children were kept and cared for, "there to remain until the further orders from this [his] court," reserving to the parents the privilege of seeing the children on certain specified occasions. The said order or judgment adds: "the court then stated to Mrs. Bryant its reluctance to make any decision separating a mother from her children and hoped that the status of Mrs. Bryant would be so changed in the future as to enable a different disposition of this case.

"[Signed] CARL B. HYATT,
"Judge Juvenile Court."

The parties and witnesses gave their statements to the judge without being sworn and without their testimony being reduced to writing. The juvenile court statute of the State gives either party the right of appeal to the Superior Court in five days, where the case is heard de novo. Mrs. Bryant and her counsel were present when judgment was entered and she was informed of her rights, but took no appeal. The juvenile court statute in question has been declared valid by the highest court of the State and as the court had jurisdiction of the parties who appeared before it, as it also did of the children who came before the court, the adjudication unappealed from was valid. The statute gives the juvenile court jurisdiction over children under sixteen years of age,

and that the proceedings were informal detracts nothing from their validity. Although the testimony was not taken under oath or reduced to writing, the controlling facts are incorporated in the adjudication and stand unappealed from. The municipal court, therefore, properly received in evidence the duly authenticated copy of the adjudication. In the following November, however, Mrs. Bryant, ignoring the judgment above referred to, took her two daughters and brought them to Philadelphia, where she and they had formerly lived and where they have since resided with her aunt, Mary A. Daven, at 7262 Woodland Avenue. Learning where the children were, the representative of said juvenile court visited Philadelphia and by a writ of habeas corpus brought the children before the municipal court of the city. After very patient hearings and the taking of testimony, that court, in an elaborate opinion of the President Judge delivered July 27, 1928, remanded the children to the Juvenile Court of Buncombe County, North Carolina. On appeal to the Superior Court, the order was, on July 2, 1929, affirmed, Judge KELLER filing a dissenting opinion, in which Judge CUNNINGHAM joined. (See Com. ex rel. v. Daven et al., 96 Pa. Superior Ct. 556.)

We think, however, the municipal court fell into error in refusing to hear evidence as to present conditions or pass upon the merits of the case when heard before it. Orders fixing the custody of children are temporary in their nature and always subject to modification to meet changed conditions. In the instant case it was expressly so made. The cardinal consideration is ever the welfare of the child, which includes its physical, intellectual, moral and spiritual well being. To this the rights of parents and all other considerations are subordinate. Moreover, the controlling question is the welfare of the child at the time of the hearing before the court and not at some former time. Here, the real question before the municipal court was the proper custody of the children living in Philadelphia in 1928; on that question all rel-

evant evidence was admissible. The error of the municipal court was in refusing to hear testimony especially as to changed and present conditions and in treating the adjudication in North Carolina as permanently fixing the status of the children so that it could be changed by no other court. That would be right in a judgment concerning property, but any court called upon to determine the custody of children must do so under conditions existing when it acts. That a decree for the custody of children is not conclusive when the matter is brought up at another time in another jurisdiction is shown by the authorities cited in the minority opinion of the Superior Court, appearing in the report of the case. The rule is also well stated by the Supreme Court of North Carolina in In re Alderman, 157 N. C. 507, 73 S. E. 126, 129, where, in refusing to recognize a decree made in Florida for the custody of a child, Justice BROWN, speaking for the court, says, inter alia: "But the infant child of their [the parents'] union is not property, and the father can have no vested right in the child or its services under a decree divorcing the parents. Such decree, as to the child, has no extraterritorial effect beyond the boundaries of the state where it was rendered. The child is now a citizen of North Carolina and as such peculiarly under its guardianship, and the courts of this State will not remand it to the jurisdiction of another state, especially where, as in this case, it is so manifestly against the true interests of the child. ...... Therefore it follows that when this child became a citizen and resident of this state and duly domiciled here, it is no longer under the control of the Florida courts. In the case of Frank Bort, 25 Kan. 308, 37 Am. Rep. 255 [a leading authority], the full faith and credit clause of the federal Constitution was invoked by the petitioner in support of his supposed right under a decree in another state. Mr. Justice BREWER (afterwards of the Supreme Court of the United States) denied the correctness of such position, saying: 'This

claim seems to rest on the assumption that the parents have some property rights in the possession of their children, and is very justly repudiated by the courts of Massachusetts: 2 Bishop on Mar. & Div. (5th ed.) 204.' The same question was before the Kansas court again in 1885, and it held that the decree of the foreign court in no manner concluded other courts of the state where the child is then residing, as to the best interests of the child." The opinion of our own court by Mr. Justice WILLIAMS, in Commonwealth v. Sage, 160 Pa. 399 (a controversy as to the custody of a child), is enlightening as to our attitude on the question of comity in this class of litigation. He says, inter alia (page 406) : "We recognize the demands of comity, and our courts should be, as they are, always ready to accede to them; but comity requires of us that we administer the laws of another state between suitors in our own courts whenever this becomes necessary to the proper administration of justice in the particular case. It does not require us to dismiss the parties with directions to proceed to Maine or California or some other state, in which the contract was made, or the parties were domiciled, so that the law of a given state may be administered by the courts of that state; but simply that we shall apply the same rule that the courts of the proper state would apply. This was all that comity required of the court below in this case." Judgments and decrees concerning children are never res judicata as to facts and conditions subsequently arising: Calkins v. Calkins, 115 S. (Ala.) 866. Orders concerning the custody of children are uniformly treated as temporary and subject to change to meet changing conditions. For example, Vice-Chancellor STEVENS, speaking for the Court of Chancery of New Jersey, in Dixon v. Dixon, 76 N. J. Eq. 364, 74 Atl. 995, says (page 997) : "But the adjudication is an adjudication upon the issue presented, and upon that only. So far as children are concerned, the situation is, or may be, constantly varying. The parent fit to have the cus-

tody of his children to-day may, by reason of changed circumstances, become unfit to-morrow. The above rule does not prevent the courts of the state, within whose limits the children may be, from considering whether a' change in the situation may not call for a new disposition." See also People v. New York Nursery and Childs Hospital, 230 N. Y. 119, 129 N. E. 341. Regardless of the decree of another state, the controlling question is the best interest of the child: Cox v. Cox, 214 S. W. (Texas) 627.

There are authorities, however, which hold that the award of the custody of children in one jurisdiction cannot be properly changed in another except on proof of changed conditions and that the burden of proof as to the latter rests upon the one who is seeking a change of custody. See 46 C. J. 1255 and cases there cited. This is not consistent, however, with the principle on which the leading cases rest, viz.: that, whenever a court is called upon to award the custody of a child, the guiding star is its welfare. And the court where the matter is pending must decide that grave question on its own best judgment, unfettered, but not necessarily uninfluenced, by a prior adjudication.

In our opinion, the true view of the question is that where the custody of a child has been passed upon by the proper court in one jurisdiction who has heard the case and made an adjudication incorporating therein certain findings of facts, the facts so found should, as to the parties participating therein be treated as established and not open to question in another jurisdiction, especially where the parties so appearing neglected to avail themselves of the statutory right of appeal. Upon those facts and any others that may be presented, the court, where the matter is again brought up, must determine the ultimate question of the best interests of the child. Whether the same conclusion should be reached, even on the same facts, depends on the judgment of the court rehearing the case.

That the respondent, Mrs. Bryant, surreptitiously removed her children from North Carolina in violation of an order of the juvenile court is important here only in so far as it may have a bearing upon her fitness to be awarded their custody. As above stated, the error in the instant case resulted from treating the adjudication of the North Carolina Juvenile Court as it would the judgment of a sister state adjusting a right of property.

The judgment of the Superior Court is reversed as is also that of the municipal court, which it affirms, and the record is ordered remitted to the latter with directions to rehear the case upon its merits and make such disposition thereof as will promote the future welfare of the children in question. The costs to await the event of the hearing.