## LANGAN v. LANGAN.

No. 8795.

United States Court of Appeals District of Columbia.

Decided June 29, 1945.

---

Mr. William R. Lichtenberg, of Washington, D. C., with whom Mr. Samuel Barker, of Washington, D. C., was on the brief, for appellant.

Mr. Joseph B. Goldman, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

Appellant initiated a habeas corpus proceeding in the District Court to recover the custody of a minor child, Joan. Her petition alleged unlawful detention of the child by reason of appellee's disregard of an order of a Maryland court, issued in a habeas corpus proceeding in that State, which awarded custody to appellant. The petition in the present case was granted and the writ issued, but, following a hearing, the writ was discharged and custody was awarded to appellee, the child's father. On this appeal appellant says that she and appellee were divorced in 1941 by the decree of a California court; that custody of the minor was then awarded to her; that, disregarding the order of custody, appellee seized the child and disappeared with her; that after a two-year search, appellant found the child living with appellee in Maryland; that in a habeas corpus proceeding a Maryland court awarded custody to appellant; that one day after the Maryland decree was signed appellee again seized the child and brought her into the District of Columbia.

Assuming the completeness and correctness of this statement, it might appear that the trial court had unwisely and improperly determined issues not presented to it in a dispute between transient non-residents.[1] But that was not the case. The father of the child is, and has been for some time, a government employee stationed in Washington, D. C.; the child had lived with him and his present wife, just over the District line in Maryland, for approximately a year and a half prior to the hearing. Since eight months prior to the hearing the family has included, also, a baby boy, son of appellee and his present wife. As we said recently, in another case, this family is in every real sense a member of the District of Columbia community; even though it did not live within its physical limits but, instead, occupied one of the Maryland homes of the Nation's capital city.[2] In addition, the trial court found that appellee and his family had moved from Maryland at the time of hearing in the present case and were actually residing in the District. Moreover, when jurisdiction is invoked, as it was in the present case, the court acts, not as an arbiter between contesting parents, determining adversary rights in human chattels, but as parens patriae, protecting the child whose custody is in dispute and making its award, solely, according to the interests and welfare of the child.[3] This is true, regardless of the settled or transient character of the parents' residence in the District, or even of a child abandoned by its parents.

[1] Cf. Curley v. Curley, 74 App.D.C. 163, 120 F.2d 730; Melvin v. Melvin, 76 U.S.App.D.C. 56, 129 F.2d 39.

[2] White v. White, — U.S.App.D.C. —, 150 F.2d 157.

[3] Boone v. Boone, — U.S.App.D.C. —, 150 F.2d 153, and authorities there cited, n. 5; Commonwealth ex rel. Rogers v. Daven, 298 Pa. 416, 148 A. 524.

■ The trial court found, in substance, that the child Joan was born in March, 1933, of the marriage of appellant and appellee; in August, 1938, the Superior Court of California entered a decree of divorce in favor of appellee against appellant; it made the child a ward of the court, at the expense of appellee, denying custody to both parties; in 1941, appellee consented that the child be put in appellant's custody in order to terminate the child's living in orphanages; appellant is a subject of Great Britain and is subject to deportation; conditions surrounding the parties have changed materially since the entry of the "consent order of custody," as follows: appellee has remarried, he and his present wife are living a normal life, they are the parents of a baby boy eight months old, the present wife is able, industrious, capable, honest and devoted to both children, and is a proper person to aid appellee in caring for the child Joan; appellee occupies a responsible position in the United States Government and is a proper person to whom to award the custody of the child; appellant falsely claimed, during the trial, that the child was illegitimate and born out of wedlock; at the trial, appellant testified on one occasion that she had married appellee and on another occasion that she had not married him; at the trial, appellant testified, also, on one occasion that she had never been married to John L. Manners, who she claimed was Joan's father, and on another occasion she interrupted argument of counsel to state that she been married to John L. Manners; appellant is irresponsible as to her statements and her mental processes are insecure; she is not a proper person to have the custody of the child; the child Joan is very intelligent, fully capable of expressing her preferences, prefers to be in appellee's custody and care, loves and cherishes her stepmother and does not desire to be with her mother; appellee had moved from the State of Maryland at the time of filing the petition in this case; he was then domiciled in the District of Columbia and intends to remain here. The court concluded that the best interests of the child required that she be placed in the custody of her father.

■ It will be noted that in his findings and conclusions the trial judge disregarded the Maryland decree and based his award upon changes in circumstances occurring since entry of the California decree.[4] Whether or not his reason for doing so was correct, his action was proper. Even in a case in which the full faith and credit clause is fully applicable, the judgment is entitled to credit only as to issues considered and judicially determined.[5] In a custody case, such a judgment is, at best, entitled only to qualified consideration in another State.[6] In the present case, the Maryland court did not judicially determine the one question upon which this case turns.

■ The Maryland law is very explicit in requiring that when a child is brought before a court or judge, even upon habeas corpus, the judge shall be guided and controlled by "a parental consideration" of what is demanded by the best interests of the child and that custody shall be determined without reference to any alleged technical claim or right of custody.[7] This statute is, in fact, a specification in terms of the duty and power of

---

[4] This is explained by a memorandum opinion, the first paragraph of which reads as follows: "While the full faith and credit clause of the Constitution rests more lightly upon custodial cases than elsewhere, this Court would follow the ruling of the Maryland Court in the above case (there being really no change in the circumstances involving the parties) except for very unusual factors appearing in the case here which were not at issue at the Maryland hearing— so · unusual, in fact, that the Court feels its ruling does not constitute a precedent of disregard of the full faith and credit clause."

[5] Swift v. McPherson, 232 U.S. 51, 57, 34 S.Ct. 239, 58 L.Ed. 499; Restatement, Conflict of Laws (1934) § 450, comment h. Cf. Cromwell v. County of Sac, 94 U.S. 351, 352, 353, 24 L.Ed. 195; Woodbury v. District of Columbia, 67 App.D. C. 278, 279, 92 F.2d 202, 203; Bijur v. Kennington, 51 App.D.C. 230, 232, 278 F. 313, 315.

[6] Boone v. Boone, — U.S.App.D.C. —, 150 F.2d 153: "When an earlier award has been made, casually, upon a consent basis, or without full inquiry— or when the decision, and the record back of it, reveals that it is based upon considerations of illegality of detention, res judicata and other such formulae— that decision is entitled to little weight in another court which, later, faces squarely the question of the child's present welfare."

[7] Annotated Code of Maryland (Flack,

the court to act as parens patriae, as well as an admonition that no casual disposition of custody cases on the bare, technical, legal ground of unlawful detention is to be tolerated. But the Maryland court, in the present case, rested its decision upon alleged illegality of detention; it, apparently, assumed that the California decree was final and entitled to full faith and credit without qualification. It refused to receive evidence of competent witnesses upon the question of present welfare of the child. Language in Tull v. Tull,[8] recently decided by the Maryland Court of Appeals, is equally apt with respect to the proceedings in Maryland in the present case: "There is no testimony in the record with regard to the present welfare and custody of the child and, without it, no rational conclusion could be had by this court under the statute which provides a review of the evidence and disposition of the child's custody on appeal." Moreover, the order of the Maryland court was merely interlocutory and nonappealable in character. It did not preclude a court of equity from assuming concurrent jurisdiction and passing subsequent orders relating to the custody of the child as its present welfare and happiness might warrant. This, also, is the law of Maryland as recently declared by its Court of Appeals in the *Tull* case. In that case a suit in equity, seeking a divorce and custody of children, had been filed subsequently to the filing of a habeas corpus petition but before a custody order had been passed in that proceeding. The Maryland Court of Appeals held that the equity court was in no way bound by the order in the habeas corpus proceeding.

For all these reasons the Maryland decree was not entitled to full faith and credit in the District and was properly disregarded in the present case. The next question, then, is the effect to be given the California decrees. The 1941 judgment of the California court appears in the record on this appeal. It sets forth that portion of the 1939 judgment of the same court which placed the child—then six years old—in the custody of a probation officer; directed him to find, and place the child in, "a substitute neutral home" and gave to both parents very limited opportunities to see the child. The 1941 judgment then provided: "The above portion of the judgment in this case is now vacated and set aside, and pursuant to stipulation of both counsel, and agreement of both parties, the order of this court in regard to minor child of the parties is as follows: * * *" The change of circumstances found by the trial court would have been amply sufficient to warrant a change in custody in California and was sufficient here. In any event, the California decree was entitled to no more credit in the District of Columbia than in California.[9] Under the California law it is subject to modification at any time during

1939) Art. 42, § 21: "Whenever a minor is brought before a court or judge upon habeas corpus in private custody, the court or judge, in the determination of the case shall be guided and controlled by a parental consideration of what is demanded by the best interest of such minor, and the custody shall be determined without regard to technicalities of procedure and without reference to any alleged technical claim or right of custody; the minor, when brought up by habeas corpus, shall be deemed to be in the custody of and subject to the order of the court or judge issuing the writ or hearing the case and the court or judge may adjourn the examination from time to time, and shall not allow the proceedings to be controlled by the parties thereto, or any of them, and it shall not lie within the power of the parties, or any of them, to dismiss the case or settle it; a minor, in such proceeding may be removed from the custody of his parent, appointed guardian, or other legal custodian; he may be committed to the care of any person, body corporate or institution, upon such terms and for such period as the court or judge may deem beneficial; if it be made to appear that such course is demanded by the temporal or moral welfare of the minor, it shall be the duty of the court or judge to commit him to the care or custody of any charitable, reformatory or other institution incorporated under the laws of this State subject to the discipline and regulations of such institution, and to the further order and direction of the court or judge; and any court or judge disposing of the custody of a minor upon habeas corpus may assume and retain jurisdiction over such minor in as ample a manner as a court of chancery, or judge of a court of chancery upon bill or petition, and may pass such other and further orders in relation to his care and custody as may be deemed just and beneficial."

8 Tull v. Tull, 172 Md. 213, 216, 217, 191 A. 572, 573, 110 A.L.R. 742.

9 Slack v. Perrine, 9 App.D.C. 128, 153, and authorities cited. Restatement, Con-

the minority of the child.[10] In California as in the District, the paramount consideration is the welfare of the child, and it is the duty of the court to which the question is presented, to change the custody if the best interests of the child require it.[11]

If the court of the jurisdiction in which a child is found concludes that its custodian is unfit, the child may be taken from him and given to another.[12] Obviously, the disposition of the child, in a case such as this, must be made by the court which has jurisdiction of it and according to the law administered by that court, not according to the law of the place whence the child came, or even of the domicile of its parents.[13] The applicable law of the District has been stated, recently and fully, in Boone v. Boone.[14] It is not necessary to restate it here, other than to say that the trial court had full power to act for the protection of the child; that its award of custody was required to be made solely from the point of view of the child's present welfare; and that the function of this court in reviewing the award is to determine whether the trial court properly exercised its discretion.

In the present case, testimony concerning the welfare of the child and the fitness of the father was given, on behalf of appellee, by a school principal, a physician, the Assistant Custodian of the Capitol, a psychiatric nurse, and the child's stepmother, with whom she is living, apparently, in happy and harmonious psychological adjustment. No witness testified, on behalf of appellant, concerning her fitness or the welfare of the child, except appellant herself. Though this may be due in part to the fact that appellant and her friends live in California, the fact remains that her testimony, and the whole record, provide little ground for a decision in her favor. It is obvious that appellant's case was presented, solely, on the theory of technical, unlawful detention and with no consideration for the present welfare of the child. The decision of the trial court could not have been otherwise than for appellee upon the evidence presented to it.

We cannot close our opinion, however, without the following observations. Appellee in this case is twice in contempt of court. He has, perhaps, been poorly advised and may have acted unwisely in his efforts to protect his daughter, with the result that he now faces possible punishment for contumacy in California and in Maryland. Presumably he could have applied to the California court for modification of its order; he could have initiated an action in Maryland in the name of the child to determine its custody, even while the habeas corpus proceeding was pending in that State. As we said, recently, in another case, we do not for a moment sanction kidnapping or encourage contempt of court;[15] but these considerations were not directly before the trial court and were not noticed by it. Consequently they are not before us for decision and we speak of them merely to keep clear the record of our own action. We leave to the proper authorities the question of discipline for appellee, if discipline is necessary.

Affirmed.

---

flict of Laws (1934) § 450, comment g, p. 538.

[10] Civil Code of California, Deering, 1941, § 138.

[11] Beyerle v. Beyerle, 155 Cal. 266, 269, 100 P. 702, 703.

[12] Restatement, Conflict of Laws (1934) § 148.

[13] Wear v. Wear, 130 Kan. 205, 224, 285 P. 606, 615, 616, 72 A.L.R. 425.

[14] Boone v. Boone, —— U.S.App.D.C. ——, 150 F.2d 153.

[15] Boone v. Boone, —— U.S.App.D.C. ——, 150 F.2d 153.