## Commonwealth ex rel. v. Rahn

*Bulleit & Bulleit*, for plaintiff.

*Swope, Brown & Swope*, for defendant.

SHEELY, P. J., January 3, 1946.—This is an application by a father for the custody of his three children, aged eight years, six years, and five years. Respondent is the maternal great-grandmother. The father and mother are divorced and, admittedly, the mother should not have custody of the children ·and she makes no claim for herself.

After their marriage the mother and father lived with the respondent for 18 months, and during that period the first child was born. Later they lived at a number of places in Maryland and in the vicinity of Abbottstown. The children spent a great deal of time with respondent and in 1941, when their mother secured employment, they went to live permanently with respondent. The father paid $5 per week for their care until he went into the Army on January 11, 1944. Thereafter his wife received an allotment for herself and the children until the husband secured a divorce in Florida on August 31, 1944. The divorce terminated the wife's allotment, and the husband changed the allotment for the children to his father and arranged for his father to pay respondent $30 per month. After three months the allotment was paid to respondent until the father was discharged from service on November 25, 1945. After his discharge the father asked

for his children but respondent refused to give them up. While he was stationed in England the father married an English girl who has not yet come to this country. He is now making his home with his parents who live on a farm near Abbottstown in York County. No one else resides with them, and there is no testimony to show that their home would not be a proper environment for the children.

It is not disputed that Mrs. Rahn has given the children proper care and attention and that she is very much attached to them. The youngest child has been with her since she was nine days old. Mrs. Rahn lives on a farm purchased by her daughter, Mrs. Lindquist, to provide a home for her mother. Her only means of support is a public assistance grant of $39.50 per month in addition to such sums as she might receive for support of the children. Neighbors and a school teacher have assisted the children with gifts of clothing. In addition to the three children, her grandson and his wife and child live with her, making a total household of seven. Her granddaughter, the mother of the children, sometimes spends weekends at the home and, from time to time, contributes some money to her grandmother.

In solving this problem we start with the proposition that these children are the children of the petitioner; that he and his wife, for reasons of convenience or necessity, placed the children with their maternal great-grandmother for care; that the petitioner has paid for that care; that upon his discharge from service and after being divorced from his wife, he desired to make other arrangements for them where he could be with them; and that respondent has refused to give up the children upon request. It has repeatedly been said by the appellate courts that in cases of this type:

"The cardinal consideration is ever the welfare of the child, which includes its physical, intellectual, moral and spiritual well being. To this the rights of

parents and all other considerations are subordinate": Commonwealth ex rel. v. Daven et al., 298 Pa. 416, 419; Commonwealth ex rel. Kreiling v. Kreiling, 156 Pa. Superior Ct. 526 (1945).

The law, however, definitely recognizes the natural relationship of parent and child and, for this reason, the courts have also said:

"Because he is obligated by law to maintain and educate his children, a parent has the legal right to the custody of his child. This right is not absolute, but still it is so moving and cogent that it is forfeitable only by misconduct or by other factors which substantially affect the child's welfare. Commonwealth ex rel. Fell v. Brown, 100 Pa. Superior Ct. 353. Experience has shown that generally a child's welfare is best promoted by entrusting its future to its parents. This experience is the basis for the principle that prima facie the parent is entitled to custody, and from this rule we depart only when we are constrained by the most compelling reasons. Commonwealth ex rel. Keenan v. Thomas, 151 Pa. Superior Ct. 131, 30 A. 2d 246": Commonwealth ex rel. McTighe v. Lindsay, 156 Pa. Superior Ct. 560 (1945).

This prima facie right of the parent to the custody of the child is not lost by his failure to contribute toward its support while in the care of respondent: Commonwealth ex rel. Fell v. Brown, 100 Pa. Superior Ct. 353 (1930); Commonwealth ex rel. Cummings v. Nearhoof, 141 Pa. Superior Ct. 581 (1940), nor by loose representations or even agreements short of actual adoption: Commonwealth ex rel. Ganster v. McGee, 103 Pa. Superior Ct. 12 (1931); Commonwealth ex rel. Keenan v. Thomas, 151 Pa. Superior Ct. 131 (1943).

What are the acts of misconduct or other factors which substantially affect the children's welfare, assigned by respondent to forfeit the prima facie right of

the father to the custody of his children? Simply that on one occasion he punished his son too severely. There is no evidence to show that the father is a man of violent temper or disposition, and he did not so impress us. Nor were we impressed with the suggestion of counsel for respondent that the father's military training rendered him incapable of fulfilling his obligation as a parent. The testimony does indicate that the whipping was too severe in that it caused welts to appear on the boy's back, but we have none of the surrounding circumstances to show the cause, or lack of cause, for the whipping. We recognize the fact, also, that no question is so open to dispute, particularly where parents and grandparents are involved, as when, how, and to what extent children should be punished. This is particularly true where, as here, the great-grandmother does not believe in whipping children at all. The wife also testified that petitioner had been unduly familiar with her mother, sisters, and aunts, in the presence of the children. This charge was made only by the wife and was not supported by the testimony of any of the other parties involved. Considering the feeling existing between the parties, the fact that the wife's testimony was not corroborated, and the fact that the specific charge was not more serious, we dismiss it. The wife also testified that she saw the father hit the children over the head but he denied this and denied that he had beaten them, although he admitted that he had whipped them.

The factor which impressed us most strongly against the father was his handling of the allotment money after his divorce. At that time he arranged for the allotment to be paid to his father. Although this allotment was for the children and amounted to $70 per month, Mrs. Rahn was given only $30 per month and the balance was deposited in bank. At the request of petitioner some of this money was sent to him. Only three payments were received by petitioner's father

and the allotment was then made payable to Mrs. Rahn. Petitioner's father was required to refund to the Government the last payment of $70. Petitioner might justify changing the allotment to his father after his divorce on the ground that he did not trust his wife to administer it. He might also attempt to justify the payment of $30 per month to Mrs. Rahn on the ground that this corresponded roughly with the $5 per week which he had previously paid her for maintenance of the children and that he was building up a reserve fund for them. But he cannot justify withdrawing money from this fund for his own personal use. That was inexcusable, but in Commonwealth ex rel. Ganster v. McGee, 103 Pa. Superior Ct. 12 (1931), the Superior Court held that the failure of a father earning $2,200 per year to support his children for a period of two years did not bar his right to custody. Here, at least, petitioner did arrange that the respondent should receive more for the children's support than she had received prior to his entering service.

In the same case (Commonwealth ex rel. Ganster v. McGee) the court made this comment which is particularly pertinent in this case (p. 14) :

". . . in addition to considering the circumstances as they now exist, we must contemplate, as far as humanly possible, the probabilities of the future."

The father is legally liable for the support of his children and, apparently, has recognized and fulfilled that obligation. The children cannot be maintained with respondent without his aid as the respondent, through no fault of hers, is unable to contribute anything to their financial support. Respondent is now 68 years of age and probably cannot care for the children for many more years. It is therefore pertinent to inquire what will become of them at that time since the mother is admittedly not a proper custodian. At that time will the children be placed in some other home at the expense of the father, or will he be required to pro-

vide a home for them? If the duty of providing a home for the children will fall upon the father then there is no reason why he should not have their custody now.

Respondent relies upon Commonwealth ex rel. Denny v. Murdock, 94 Pa. Superior Ct. 59, Commonwealth v. Mauch, Betz Appeal, 91 Pa. Superior Ct. 220, and Commonwealth ex rel. Bloomfield v. Faxstein, 84 Pa. Superior Ct. 243. These cases are readily distinguishable. In the Murdock case the court said (p. 62) :

"It is sufficient to remark that it (the record) discloses such a course of misconduct on the part of the father and his present wife as requires us to refuse to the father any control of the son at this time."

In the Mauch case petitioner deserted his wife and child, failed to comply with a support order, filed an unwarranted action in divorce and, after the death of his wife, failed to support the child in any way. In the Faxstein case, the child was with the maternal grandmother with whom she had lived for a number of years and the father proposed to take her to a boarding house where he was only a roomer, and where she would be among strangers while he was away at work. None of these elements appear in the present case.

We conclude that petitioner should have the custody of his children. No misconduct or other factors which substantially affect their welfare have been shown to forfeit his natural right to custody. In reaching this conclusion we have not overlooked the attachment which respondent undoubtedly has for the children, and they for her, or the fact that she has cared for the children in an excellent manner during a period when petitioner could not care for them. He should show his appreciation of the assistance given him by permitting the children to visit with the respondent frequently, and for periods of time, and by providing amply for their maintenance while they are visiting her. This moral obligation will be enforced by suitable orders if that course becomes necessary.

And now, January 3, 1946, the prayer of petitioner is granted and it is ordered that the custody of Harold Eugene Crawford, Rozella Mae Crawford and Dorothy Irene Crawford be delivered to petitioner, Charles E. Crawford, the cost of this proceeding to be paid by Charles E. Crawford.