Commonwealth ex rel. Graham, Appellant, *v.*
Graham et al.

Argued March 21, 1950. Before Rhodes, P. J., Reno,
Dithrich and Ross, JJ. (Hirt and Arnold, JJ., absent).

*Dan P. Arnold,* with him *D. Edward Chaplin* and *Chaplin & Arnold,* for appellant.

*W. Albert Ramey,* for appellees.

OPINION BY DITHRICH, J., September 27, 1950:

Anna May Graham, the relatrix, having been awarded the exclusive custody of Andrew Roger Graham, the five-year-old son of relatrix and David B. Graham, by the Court of Common Pleas of Cuyahoga County, Ohio, instituted this habeas corpus proceeding in Clearfield County, Pennsylvania, seeking enforcement of the Ohio decree.

The Ohio court, having "jurisdiction of both said parties," on April 8, 1949, having found that David B. Graham had "been guilty of gross neglect of duty towards the Plaintiff [relatrix herein]," entered a decree divorcing the parties, and at the same time ordered "that the Plaintiff be . . . awarded the temporary custody of the said minor child," but that the child should continue to be domiciled with the paternal "grandfather." The use of the word "grandfather" was, no doubt, an inadvertence on the part of the court, for the child was at the time domiciled not with his paternal grandfather, but with his paternal great-grandfather, a man 78 years of age; and the present proceeding is not a proceeding between the mother and father of the child, nor between the mother and the paternal grandfather, but *between the mother and the paternal great-grandfather.*

Following the entry of the aforesaid decree, the great-grandfather returned from the domicile of his grandson in Cleveland, Ohio, to his own domicile in Shawville, Clearfield County, Pennsylvania, taking the child with him. On June 11 they were joined by the father of the

child and since then the three have resided together in a three-room frame house, without any modern facilities, not even a bathroom. However, the learned president judge of the court below felt that the child "would be kept physically clean by either his mother or great-grandfather." There is no woman living in the house and the child shares a bedroom with his great-grandfather. The paternal grandmother lives within calling distance and the child spends considerable time with his grandmother, but she does not have supervision of him; that falls to the lot of the great-grandfather.

Although the original order awarding temporary custody to the mother provided that she should have reasonable and liberal rights of visitation "including the right to have said child with her in her own home for reasonable periods of time," it became necessary for her to secure a writ of habeas corpus to enforce such right when she went to visit the child in July of 1949. After that experience, upon her return to Cleveland she petitioned the court for a modification of the original order. The petition was granted and on October 26, 1949, the "Court being fully advised in the premises, . . . [found] that the defendant [David B. Graham] . . . [had] been duly and legally served with notice herein according to law," and entered an order enjoining him "from interfering in any manner with either said child or with said plaintiff in the custody thereof." The court further found that "the best interests and welfare of said child will be served by said change of custody" and "therefore, ordered, adjudged and decreed that the custody . . . of said child . . . be . . . awarded exclusively to the plaintiff," and that "the said child is to be domiciled in the home of Dan Gorby of Tucson [Ariz.], until further order" of the court. The order for change of domicile from Pennsylvania to Arizona was not made until the court "after careful investigation" found "said home to be fit and proper."

On November 2, 1949, the mother filed a petition for a writ of habeas corpus in the Court of Common Pleas of Clearfield County seeking to enforce the final order and decree of the Ohio court, and on November 4, 1949, exactly nine days after the mother had been awarded exclusive custody of the child, a hearing was had before the learned president judge of the court below. Notwithstanding the fact that the conditions and circumstances existing at the time the mother was awarded custody of the child remained the same, the court below awarded custody to the great-grandfather for the reason that the court was "not in accord [with] and . . . unwilling to enforce" the decree changing the domicile of the child.

In the course of its opinion the learned court said that it did "not agree" that full faith and credit should be given "the decree of a sister state" involving the custody of a child as stated "[i]n several opinions of the Superior Court."

The learned president judge of the court below is, of course, entitled to his opinion in respect of the decisions of this Court, but the Supreme Court in *Townsend Trust*, 349 Pa. 162, 36 A. 2d 438, affirmed a decree of the Court of Common Pleas of Delaware County on the opinion of Judge ERVIN, wherein it was stated (page 168) that "a lower court has no right to ignore the latest decision of the Superior Court of this Commonwealth on an issue which has been squarely decided. Until that decision should be over-ruled by the Superior Court itself or over-ruled by the Supreme Court, it is still the law of this Commonwealth, . . ."

Without any claim to, or pride of, authorship, we feel that in *Commonwealth ex rel. Di Pasquale v. Di Pasquale*, 162 Pa. Superior Ct. 29 (allocatur refused ib. xxv), 56 A. 2d 265, our latest decision touching on the question, we correctly stated the law, as follows

(page 33): "[W]hile it has generally been held that a judgment as to the custody of children is entitled to full faith and credit in all other states, the judgment is not conclusive if the conditions and circumstances existing at the time of the rendition of the judgment have changed. 50 C. J. S. 487, Judgments, section 889 (h) (5); Com. ex rel. v. Daven, supra [298 Pa. 416, 148 A. 524]."

The court below correctly quoted the law as thus stated but erred in finding that the change in domicile was "a change in conditions" that rendered the award of custody by the Ohio court inconclusive. We agree that it would have that effect if it had been "a change in conditions" arising subsequent to the award; but it was not. The award to the mother of exclusive custody was made with full knowledge by the court that the child was to be taken to Arizona.

In Restatement, Conflict of Laws, §147, titled "Enforcement of Custody Created by Foreign Law," it is stated that: "Except as stated in §148 [where there is proof that the custodian of the child is unfit to have control of the child], when the custody of a child has been awarded by the proper court to either parent, the decree will be enforced in other states." In the Pennsylvania Annotations to §147, it is stated that:

"The Pennsylvania courts apparently consider all orders fixing the custody of children as temporary in nature, without regard to whether such an order was granted by a court of the state of the domicil of the child or by the court of another state having personal jurisdiction over the child. The decree of a foreign court fixing custody renders the facts found in the foreign proceeding res judicata but apparently the ultimate decision, even on the same facts, is always open to question. Commonwealth ex rel. v. Daven, 298 Pa. 416, 148 A. 524 (1930). See In re Rosenthal, 103 Pa. Super. Ct. 27, 32,

33, 157 A. 342 (1931). Cf. Commonwealth ex rel. Thompson v. Yarnell, 313 Pa. 244, 169 A. 370 (1933).

"The holding in Commonwealth ex rel. v. Daven and the *dicta* in Re Rosenthal seem consistent with the rule of this section as qualified by §148.

"In support of the rule of this section see Roberts v. Roberts, 80 Pitts. L. J. 69, 71 (1930) (*semble*)."

We feel that this is a case where full faith and credit should be given to the decree of the Ohio court; but even if it were not, then, in the language of the court below, "independent of . . . [the] decree of the Ohio court," we would still hold that the interests and welfare of the child will be best served by awarding custody to the mother. In *Commonwealth ex rel. Gates v. Gates,* 161 Pa. Superior Ct. 423, 55 A. 2d 562, we said, in an opinion by HIRT, J. (pages 424-425): "In general, the needs of a child of tender years are best served by its mother and unless compelling reasons appear to the contrary, such child should be committed to the care and custody of its mother." We held that: "The order in . . . [that] case [awarding custody to the mother] . . . [was] justified on that principle alone." Applying the same reasoning to the facts in this case, we have no hesitancy in saying that an award of custody to the mother would have been justified on the same principle.

We simply cannot follow the reasoning of the learned president judge of the court below when he says: "The principal objection to the mother having custody of her child, is that she has not occupied the normal position of mother and child for the past four and one-half years. While she may have had to work during some of that time, we feel that this is not the normal relationship." We agree that it is not; but the mother was forced into it by the "gross neglect" of her husband toward her and his refusal to support the child until he was ordered to do so by the Juvenile Court of Cuyahoga County, Ohio.

The learned court below felt "that the mother [who is a practical nurse] would raise this child to the best of her ability, but that she would probably follow some prescribed set of rules and formula, and the child would not have the love, affection and understanding that he apparently gets from his great-grandfather." In our opinion that is an entirely unwarranted assumption, unsupported by the evidence. The court continued: "What this child needs is not expert care, but a sense of security." How the child could attain "a sense of security" in the custody of the great-grandfather, who at the time of the hearing was, in his own words, "along about 78" and receiving "Old Age Assistance," is beyond us. As stated by the court below, "the normal parental relationship, . . . unfortunately, has been assumed by the great-grandfather . . . who has taken the place of the father and mother both"; but it is not due to any fault on the part of the mother. Normal parental relationship with at least one parent will be restored if the mother is awarded custody of the child, and the Ohio court, no doubt, had that thought in mind when it entered its order enjoining the father "from interfering . . . with either said child or with said plaintiff in the custody thereof."

The order is reversed and the record is remitted with directions to enter an order awarding the custody of the child, Andrew Roger Graham, to relatrix, with the right to take the child with her to the State of Arizona.

RHODES, P. J., dissents.

ARNOLD, J., took no part in the hearing, consideration or decision of this case.