## Gellnek Estate

220

*Frank I. Ginsburg*, for accountant.

*Elgin E. West*, for Commonwealth.

VAN RODEN, P. J., January 6, 1951.—Decedent, who is a widow, died February 27, 1950, survived by two daughters, both of whom are sui juris, and by one son, who is an alleged weak-minded person, and who has been an inmate of the Norristown State Hospital since November 13, 1943.

By her will decedent devised and bequeathed a one-third share of her estate unto each of her daughters outright, and the remaining one-third share in trust for the care and maintenance of her son during his lifetime with remainder in favor of his children.

The Commonwealth has presented a claim against the estate in the amount of $2,730.73 representing the cost of maintenance of decedent's incompetent son, at the Norristown State Hospital during the period from the date of his commitment until the date of decedent's death. The amount of the claim was substantiated by satisfactory evidence, and it is admittedly unpaid. However, payment of the claim out of the assets of decedent's estate is refused by the accountant on the ground that the primary obligation is on the incom-

petent person and that the Commonwealth must first attempt to satisfy its claim out of his personal estate before attempting to reach the estate of the deceased mother.

There can be no doubt that the mother, in her lifetime, was legally responsible for the cost of maintenance of her son at the Norristown State Hospital. The Act of June 1, 1915, P. L. 661, sec. 3, as amended May 10, 1921, P. L. 438, sec. 2, 71 PS §1783, expressly provides that:

"The husband, wife, father, *mother*, child, or children of any person who is an inmate of any asylum, hospital, home, or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do, shall be liable to pay for the maintenance of any such person, as hereinafter provided." (Italics supplied.)

It is equally clear that the death of the incompetent's mother did not terminate her liability for maintenance costs accrued during her lifetime, but such liability may be enforced against her estate by appropriate proceedings in the orphans' court: Harnish's Estate, 268 Pa. 128 (1920) ; Stoner Estate, 358 Pa. 252 (1948). The fact that no effort to enforce this liability was made during the lifetime of the parent does not bar the enforcement of such liability against the parent's estate: Brubaker Estate, 346 Pa. 339 (1943).

In the instant case the argument of the accountant is to the effect that unless the Commonwealth is compelled to proceed first against the incompetent's individual estate, the allowance of the claim against the deceased mother's estate will deprive his sisters of their inheritance, and in effect require them to contribute to their brother's support, a duty not imposed by the statute. It is true that an orphans' court acts upon equitable principles and endeavors to render jus-

tice as between the parties, but this does not constitute a warrant for ignoring the provisions of a statute.

Section 3 of the Act of June 1, 1915, quoted above, as construed by the Supreme Court, imposes upon the specified relatives of the inmate a liability which is "directed and wholly independent of the inmate's common law liability which Section 1 of the Act declares and continues": Commonwealth v. Zommick, 362 Pa. 299, 301 (1949).

"By the terms of Section 3, the only conditions to the enforcement of the liability thereby imposed is that the person sought to be charged therewith is 'legally able' to pay for the patient's maintenance": Id. at p. 302.

It was held in the Zommick case that in order for the Commonwealth to recover from a parent it is unnecessary to establish antecedently the continued indigency of the inmate. It was further held that "the patient's financial position is of no materiality to the enforcement of the liability created by Section 3".

Counsel for the accountant suggests in his argument that in the Zommick decision the Supreme Court may have failed to give consideration to the Act of July 11, 1923, P. L. 998, sec. 503, as amended October 11, 1938 (Sp. Sess.), P. L. 63, sec. 1, 50 PS §143, which provides that:

"Whenever any mental patient is admitted, whether by order of a court or judge, or in any other manner authorized by the provisions of this act, to any mental hospital maintained wholly or in part by the Commonwealth, the cost of care and maintenance, including clothing, of such patient in such hospital shall be defrayed from the real or personal property of such patient; and this liability may be enforced by writ of fieri facias, venditioni exponas, or attachment execution, if he have any such property. If he have no such property, or is not possessed of sufficient property to defray such expenses, then so much of said expenses

as shall be in excess of any amount collected from his said property and paid on account of said expenses shall be paid by such person as is liable under existing laws for his support; and if there be no such person, or if he is financially unable to pay such expenses or any proportion thereof, then such expenses or the proportion thereof which cannot be collected from the patient, or the person liable for his support, shall be paid by the Commonwealth."

Although section 503 of the Mental Health Act, above quoted, may be pertinent in the determination of the order of liability for maintenance in a State institution as between the patient and person made liable by section 3 of the Act of June 1, 1915, it seems clear that the Act of July 11, 1923, was not intended by the legislature to take away from the Commonwealth any right conferred by the Act of 1915. See Brubaker Estate, supra. In any event it is not within the province of this court to specify whether the Supreme Court failed to consider any pertinent legal aspect of the issue decided in the Zommick case. Until that decision has been overruled by the Supreme Court itself, it is still the law of this Commonwealth and must be followed by this court: Commonwealth ex rel. Graham v. Graham et al., 167 Pa. Superior Ct. 470, 473 (1950).

Accordingly, we are obliged to hold that the Commonwealth may properly elect to proceed against the deceased mother's estate without first exhausting all efforts to discover and execute upon the inmate's own estate. Having reached such conclusion, it is unnecessary to consider the sufficiency of the evidence submitted by the accountant to establish the fact of non-indigency of decedent's inmate son.

In Boles' Estate, 316 Pa. 179 (1934), where the father of an insane patient died intestate and the

patient thereby became entitled to a share of his father's estate, the claim of the Commonwealth and of the City of Philadelphia for the son's maintenance were allowed and directed to be paid out of decedent's estate, but applying the analogy of suretyship, the court directed reimbursement of the father's estate of so much of the son's interest as would repay the amounts awarded to the Commonwealth and unto the City of Philadelphia on account of the obligation of the son. In the instant case, however, the inmate son is not entitled to receive any portion of his mother's estate outright. Since his share was placed in trust, it must be awarded to the trustee. Whether such fund in the hands of the trustee may be reached by the present accountant or by decedent's daughter by subrogation, to compel reimbursement, cannot now be decided. Such issue must be determined in appropriate proceedings where all interested parties are represented of record. Similarly, the right of the accountant or of decedent's daughters to compel reimbursement out of other assets which may be owned by the incompetent in his own right must await appropriate proceeding.

Accordingly, the claim of the Commonwealth of Pennsylvania in the sum of $2,730.73, for the costs of maintenance of Charles Gellnek, Jr., son of decedent, at the Norristown State Hospital, is hereby allowed by the court, and the accountant is directed to pay same out of the assets of the estate, and additional credit is hereby allowed therefor. However, the allowance of the claim of the Commonwealth is expressly made without prejudice to any right which the accountant or any other party in interest may have by way of subrogation to proceed against the individual property of Charles Gellnek, Jr., for reimbursement.