## Commonwealth ex rel. Tuley v. Tuley

*William F. Clinger*, for relatrix.

*William M. Hill, Jr.*, for defendants.

FLICK, P. J., August 10, 1966.—This is a habeas corpus proceeding for the custody of Evan Arthur Tuley, aged 3, and his sister Sherry Ann Tuley, aged 2, children of Betty Marie Fuller, who petitioned for the writ, and Paul E. Tuley, father of the children. The parents were divorced in an action brought by the children's father in the Chancery Court of Pulaski County, Arkansas, and the divorce decree, dated February 23, 1965, awarded custody to the mother. Since that time, each parent has remarried.

At the hearing, both parents were represented by counsel. Testimony was given by the children's mother and by her mother, Mrs. Pearl Edwards. In support of the father's claim, testimony was given by Deputy Sheriff Hegerty, by the children's father and his present wife, by Mr. Clark and Mrs. Walton, neighbors long acquainted with the children's father, and by Mrs. Evan Tuley, the paternal grandmother.

Custody cases are tragic and difficult of solution when the contest is between the parents, divorced and each remarried, as it is in the instant case. The law has no great virtue in solving problems arising out of a broken home, but if the parents cannot agree, a legal solution must be sought, and it then becomes the duty of the court to arrive at a decision which will best promote the welfare of the children under the evidence and all the incidents and circumstances of

the case. The court's task has been designated by our Supreme Court as "one of the most difficult and delicate upon which a court is called upon to act": Commonwealth ex rel. Parker v. Blatt, 165 Pa. 213, 215. However, these cases would not be in court if they could be easily solved by the divorced parents, and our courts have had to deal with the situation over and over again, so that clear rules of law have been established. In Commonwealth ex rel. Levinson v. Levinson, 162 Pa. Superior Ct. 563, the court said, at page 565: "In a dispute between parents of a minor child it is for the court to decide in its sound discretion to which, if either, the custody of the child shall be committed 'regard first being had to the fitness of such parent and the best interest and permanent welfare of said child.' Act of June 26, 1895, P. L. 316, 48 PS 92. This has always been the rule; the paramount consideration is the welfare of the child. Hixon's Appeal, 145 Pa. Superior Ct. 33, 20 A. 2d 925".

In the case of Commonwealth ex rel. v. Daven, 298 Pa. 416, the Supreme Court of Pennsylvania said at page 419: "The cardinal consideration is ever the welfare of the child, which includes its physical, intellectual, moral and spiritual well-being. To this the rights of parents and all other considerations are subordinate. Moreover, the controlling question is the welfare of the child at the time of the hearing before the court and not at some former time".

Children of tender years are presumed to need the care of their mother more than the care of a father, and, therefore, the rule has developed that the mother will be given custody unless compelling reasons appear to the contrary. This rule does not establish a right in the mother, but a presumption is raised in favor of the mother of very young children. The presumption, of course, can be rebutted. The issue before the court in the instant case is to determine whether

the evidence shows compelling reasons why custody of the Tuley children should not be awarded to their mother.

The situation must be considered as it is at the present time, and not as it was before the parents were divorced. At that time, the father was serving in the armed forces and both parties misbehaved and did not show a proper understanding of their obligations as husband and wife, or as parents. The father stated at the hearing that he was too young to understand what was expected of him.

After the divorce, the mother took the children to her mother's home in Ft. Worth, Texas. She was employed by Gulf-American Company and resided in Ft. Worth from February to October, 1965. She then obtained employment with the American Express Company in Stuttgart, Germany, and she took the children to Germany without any definite arrangements as to where they would live or who would care for the children while she was at work. The situation in Germany was what might be expected under such circumstances. The mother was unable to properly maintain her children and was forced to return with them to the United States. Being without funds, she appealed to her ex-husband, and he and his parents supplied the money and transportation from Germany to his home in Youngsville, Pa.

When the mother and children arrived in New York by air, the children's father met them and brought them to his parents' home, where his mother offered to care for the children while their mother sought employment. While seeking employment, the children's mother obtained rides from Youngsville to Warren with various friends. On one occasion, she did not appear when it was time for the friend to take her back to Youngsville, and later she telephoned to the home of the children's father, about midnight, saying

that she was at a party at the Moose Club. The children's father was disgusted with this and told her that she could come back and get her things, which would be packed and waiting for her.

The children's mother then went to live with some other girls on Mohawk Avenue and continued to seek employment. She obtained a job doing clerical work at Stein's Store, but she did not work there long. The girls living in the apartment on Mohawk Avenue were dating young men working on the Kinzua Dam project. The mother of the children borrowed a car from one of these young men and drove off to Mississippi for the purpose of marrying another young man who was working at the dam, a young man 19 years of age and known to the children's mother only about a week before she married him. There is serious question as to whether this marriage performed in Mississippi is a lawful marriage. Both parties lied about their age and did not comply with the three-day waiting period.

In the meantime, the friend whose car had been borrowed filed a charge against the mother of these children, larceny by bailee. She knew of this criminal charge, but she did not return the car. After her husband obtained a job in Rockford, Illinois, where some of his relatives live, the couple came back to Warren to see if she could obtain custody of the children. As soon as it was learned by the authorities that she was in Warren County, she was arrested on the larceny charge. After serving her sentence, she employed counsel and filed her petition for writ of habeas corpus to obtain custody of her children. Even without the conduct by the children's mother as above set forth, the court could not award her custody of these children. Her present husband is only 19 years of age. He did not appear at the hearing, and the court has had no opportunity to observe him and to determine how he might accept the responsibility involved in being a

stepfather to the children and having them in his home. Also, no testimony was given as to the general reputation and behavior of the stepfather in the community where he lives. In the court's opinion, it is very clear from the evidence that compelling reasons exist for giving custody of these children to their father and not to their mother. The record shows an appalling lack of stability in the conduct of the children's mother. Taking the children to Germany without any arrangements for their care and going off in a friend's car to marry a man 19 years old whom she had only known about a week are such clear indications of unstable conduct that it would be contrary to law to award custody to the mother.

The law of Pennsylvania provides that estrangement between parent and child should be avoided whenever possible and, therefore, visitations with the parent to whom custody is not given should be ordered. See Commonwealth ex rel. Moore v. Moore, 172 Pa. Superior Ct. 255. Under all the evidence, custody must be awarded to the father of these children with visitations by the mother on two consecutive days each month. An additional safeguard for the welfare of the children is shown by the testimony of their paternal grandmother that she and her husband will step in and care for the children if the father's home with his present wife, to whom he had been married only 5 days at the time of the hearing, proves unfit for them.

Therefore, the court makes the following

ORDER

And now, August 10, 1966, for the reasons stated in the foregoing opinion, it is hereby ordered and decreed that custody of Evan Arthur Tuley and Sherry Ann Tuley is hereby given to their father, Paul E. Tuley, and said children are to reside with him and his present wife in Warren County; and if is further

ordered that the mother of said children, Betty Marie Fuller, may visit with them on the second Monday and Tuesday of each month beginning with September 12 and 13, 1966. These visits are not mandatory and the children's mother shall inform their father in advance as to whether she intends to come to Warren County to visit with their children. If the visits cannot be amicably carried out in the home of Paul A. Tuley, or the home of his parents, arrangements shall be made for such visits to take place in the Child Welfare Department of the Warren County Courthouse. Both parents and all their relations are cautioned not to do anything which will further injure these children, but to conduct themselves in a manner which will promote the welfare of the children.