## COOK v. COOK.

### No. 8419.

United States Court of Appeals for the District of Columbia.

Argued April 6, 1943.

Decided May 17, 1943.

Mr. P. Bateman Ennis, of Washington, D. C., for appellant.

Mr. Edgar J. Goodrich, of Washington, D. C., with whom Miss Mildred E. Reeves and Mr. Walter J. Brobyn, both of Washington, D. C., were on the brief, for appellee.

Before EDGERTON and ARNOLD, Associate Justices, and EICHER, Chief Justice of the District Court, sitting by designation.

ARNOLD, Associate Justice.

This is an appeal from an order of the District Court in a habeas corpus proceeding which directs appellant, Annette Hord Cook, the mother of three children, 9, 12 and 14 years of age, to deliver them into the custody of appellee, George T. Cook, who is their grandfather.

The mother had originally been granted the custody of the children in 1936 by the Supreme Court of Erie County, New York, as part of a decree giving her an absolute divorce. She had then moved to Washington with the children, sending them back for short periods to visit their father. In 1939 the father refused to return the children and asked the New York court for a modification of the custodial order.

At the hearing before the New York court it appeared that the grandfather was a man of means and able to offer the chil-

dren many advantages. The mother, who had been given only $5 a week alimony and $15 a week for maintenance of the children, had not been able to maintain them in a home separate from her mother in Washington.

On the basis of this evidence the New York court granted a temporary order giving custody to the grandfather except for holiday seasons.

Thereafter the mother established a separate home to receive the children in Washington. When this was done she applied to the New York court for custody of the children. At this second hearing in March, 1941, it appeared she was earning only $135 a month. The children were in school in Buffalo and wished to remain there. A welfare report showed they were well cared for. On this evidence the New York court continued the temporary custody in the grandfather.

In the summer of 1941 when the children came to Washington the mother refused to return them. She put them in school in Washington, where they have been ever since.

The grandfather took no action in court to regain custody of the children until August, 1942, when he filed the present proceedings. However, the $5 a week alimony and $15 a week support of the children was cut off on the ground that the mother was acting in contempt of the New York order.

At the hearing below it appeared that the mother had established an adequate home concerning which counsel for appellee stated in his brief: "We do not doubt that conditions in the home of the appellant are pleasant and that the children are well-fed, properly clothed and cared for as stated by counsel, nor do we doubt the love and affection between them and their mother." The mother's earnings had slightly increased since the order of 1941. Over a period of a year the children had become accustomed to Washington schools. They testified that they desired to remain with their mother. There is no claim by the grandfather that the mother is morally disqualified for custody of the children.

To award the grandfather custody under these circumstances will result in taking three young children out of schools in which they are established and have made friends, and sending them away from their mother, who has an adequate home for them, against their wishes. The only apparent reason for doing so is the fact that

their grandfather's means will be sufficient to give them greater educational and material advantages.

The record does not show any specific obligation by the grandfather as to future education, beyond the assumption that he intends to be generous.

Whether these indefinite material advantages justify taking the children away from the mother against their wishes is a question upon which this court cannot pass. We can only review the question of whether the trial court properly exercised its discretion with a view to the present welfare of the children.

In awarding custody to the grandfather the trial court made no findings on the question of the present welfare of the children, because it considered itself to be bound by the New York court order of 1941. Its only finding was as follows: "I find no such change in circumstances or conditions to warrant this Court in not giving full faith and credit to the decree of the New York court, which had jurisdiction over the parents and the children, and which after due consideration made the order it did."

The trial court was in error in holding that the order of the New York court was res judicata on the question of the present welfare of the children. There was sufficient change in circumstances to require the trial court to exercise its independent judgment as to what order will best promote the welfare of the children. These circumstances were (1) the fact that these children of tender years have become accustomed to the home which their mother has established and which is adequate; (2) that the children are established in Washington schools; (3) that the children do not wish to go back to Buffalo. None of these circumstances were before the New York court when it entered its order of 1941.

It is true that these changes occurred while the mother was violating the New York order. But it is also true that the grandfather, instead of taking immediate action, allowed this situation to develop. The only action taken was to cut off the meager sum of $5 a week alimony and $15 a week for the support of the children. Neither the violation of the order nor the retaliation can be given weight in determining the question of the children's present welfare.

A custodial order is conclusive as to all matters prior to its promulgation.[1] But the doctrine of res judicata cannot settle the question of a child's welfare for all time to come; it cannot prevent a court at a subsequent time from determining what is best for the children at that time. The usual way of expressing this rule is to say that "circumstances have changed" when the order is no longer in the children's interest. But the phrase "change of circumstances" should not be mechanically construed. The children's happiness, their psychological adjustment, their own wishes, are as much entitled to consideration as changes in material environment. As was said in Boone v. Boone,[2] the trial court should constantly keep in mind the ultimate question, which is "whether the welfare of the children now requires a change in the custody previously provided by the court of their domicile."

The opinion in Boone v. Boone went on to point out that a former decree of custody does not have the effect of res judicata, but only an evidential bearing upon the ultimate question of welfare. Where the circumstances are the same as existed at the time of the former decree, the evidential effect of that decree may, according to the Boone case, be given "the effect of res judicata". This is a common sense rule to avoid a re-trial of the same issues and charges which were tried in the former proceedings. But in this case the trial court need not retry any issues which were before the New York court. It is required only to make an independent examination of what will best promote the children's welfare in a situation which is different from the one before the New York court.

It has been argued that unless some special emergency has arisen the former custodial order must be continued in effect. The purpose of such a strict rule is to discourage repeated litigation over the custody of children. It is a sufficient answer to say that the kind of litigation we should seek to avoid is repeated trials of the same charges and counter-charges. It can hardly be claimed that an examination of the present welfare of the children, in the light of new facts relating to their happiness and adjustment, is a re-trial of an old issue. Of course, such examinations are subject to abuses, but we have enough confidence in our courts to assume that if the ultimate question—the children's welfare—is kept in mind, their action will be for the most part intelligent and helpful.

The children are now in the District of Columbia and the court here not only has jurisdiction but owes the duty to protect them and do the thing which appears to be best for them without regard to anything any other court has previously done. Accordingly the order is reversed and the cause remanded to enable the trial court to make findings of fact on the question of the children's present welfare and to enter an appropriate order based on those findings.

Reversed and remanded.

EICHER, Chief Justice of the District Court.

I concur fully in the reasoning and result of Justice Arnold's opinion, but would add a fourth change in circumstance arising out of the conceded facts that the New York Court twice refused to award the custody of the children to their father and yet the grandfather heretofore left them with their father and step-mother for the greater part of the time and proposes to do so again if the children should be ordered back to Buffalo.

---

[1] Goodrich, Conflict of Laws (2d ed. 1938) § 132, p. 359.

[2] 1942, 76 U.S.App.D.C. 399, 132 F.2d 14, 15.