## BARTLETT v. BARTLETT.

No. 11714.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 12, 1954.

Decided June 3, 1954.

their son, then less than two years old. He alleged that she had deserted him without cause in 1951 and had come to the District of Columbia. She and the child have continued to live in her parents' home in Washington despite his entreaties that she return to their home in New Jersey. Charging that she is selfish, unstable and therefore not a proper person to have custody, he alleged that the home of his parents offers a fine and loving atmosphere from which the child would benefit. Mr. Bartlett made no charge that his wife was unfit for custody by reason of any immoral conduct. A counter-claim for custody and maintenance for herself and the child was filed by Mrs. Bartlett. She offered her husband's "inconsiderate and miserly treatment" as the reason for having left him and stated that she was presently without adequate funds for the support of the child and herself.

After hearing extensive testimony from both parties and their witnesses, the trial court found that Mrs. Bartlett had had "reasonable cause" to leave her husband. It found that he had been miserly in providing for her and the child, and that his inconsiderateness in their marital and social life indicated that he had no love, affection or respect for her. Mrs. Bartlett was also found to be "a devoted mother [who] has always given the child * * * fine physical care and great love and affection" and, further, her parents' home was deemed to offer "a proper environment for the child." The court awarded custody to the wife on the ground that it was "in the welfare of the child" but also granted Mr. Bartlett the right to visit with the child in Washington and in his parents' home in New Jersey. The decree required Mr. Bartlett to pay one hundred dollars per month for the maintenance of the child, but, because Mrs. Bartlett "is self-supporting," the court concluded "in its discretion" to deny payments for her support.

Mr. Jean M. Boardman, with whom Mr. James E. Faust, Washington, D. C., was on the brief, for appellant.

Mr. John Geyer Tausig, Washington, D. C., for appellee.

Before STEPHENS, Chief Judge, and EDGERTON, CLARK, WILBUR K. MILLER, PRETTYMAN, BAZELON, FAHY, WASHINGTON, and DANAHER, Circuit Judges.

BAZELON, Circuit Judge.

Robert Bartlett filed a complaint against his wife, Nicole, for custody of

Mr. Bartlett brought this appeal. His principal contention is that our decision

in Towson v. Towson,[1] precludes an award of custody to his wife unless she had "legal cause" to leave him and to refuse to return. By "legal cause" it is clear that Mr. Bartlett means such grounds as would warrant a divorce or separate maintenance decree. For he says, "the gist of the matter is the lack of delictum on the part of the husband and the wrongful living apart from him by the wife."[2] Upon the assumption that the court meant "legal cause" when it found Mrs. Bartlett had "reasonable cause,"[3] he attacks that finding as erroneous. Thus, the effect of what he urges upon us is that, in custody matters, the adversary rights of the parents must be determined because such rights, and not the welfare of the child, must be given paramount consideration.

In Towson, the wife, who had left her husband, sought a limited divorce. Although the trial court denied such relief, it granted the wife's requests for custody of their child and payments by the husband for her support and that of the child On appeal, this court set aside the relief granted. The opinion explained that, under our statute,[4] a husband who is willing to provide a suitable home for his wife is not obliged to support her if she lives apart from him without cause.[5] But its only reference to the problem of custody and maintenance for the child is found in a statement, which was quoted with approval, from the New York case of Davis v. Davis.[6] That statement is to the effect that, in a wife's unsuccessful action for a limited divorce, the court is not authorized to award custody of the child and maintenance payments for the wife and child.[7]

Significantly, the opinion in Davis pointed out that under the New York statute, the mother might obtain custody of the child in a subsequent habeas corpus proceeding even though custody had been denied upon failure of her separation action.[8] Thus, if it be assumed that this court, in Towson, accepted the New York view reflected in the Davis case, it may also be assumed that this court denied custody to the mother only because the question had arisen in the wrong form of action—viz., divorce rather than habeas corpus. This analysis of Towson is supported by Stickel v. Stickel,[9] decided earlier by this court, since that case involved a habeas corpus proceeding wherein we upheld an award of custody to a wife who had left her husband without grounds for a legal separation. Today, of course, it is the substance not the form of the action which governs.

No case in this jurisdiction was cited in Towson to support the view that

---

1. 1919, 49 App.D.C. 45, 258 F. 517.

2. Brief for Appellant, p. 26.

3. Id., at 6.

4. 31 Stat. 1346 (1901), D.C.Code § 980 (1919) identical in all pertinent respects to 16 D.C.Code § 415 (1951), now in effect, provided:
   "Whenever any husband shall fail or refuse to maintain his wife and minor children, if any, although able so to do, the court, on application of the wife, may decree that he shall pay her, periodically, such sums as would be allowed to her as permanent alimony in case of divorce for the maintenance of herself and the minor children committed to her care by the court, and the payment thereof may be enforced in the same manner as directed in regard to such permanent alimony."

5. 49 App.D.C. at page 47, 258 F. at page 519.

6. 1878, 75 N.Y. 221.

7. Id., 75 N.Y. at page 227.

8. Id., 75 N.Y. at pages 227–28.
   "The remedy by habeas corpus is open to the plaintiff, and she may by a direct proceeding, have the right to the custody of the children determined, as between herself and her husband, but the existence of this remedy does not tend to show that the custody may be adjudged to her, in the action for separation, after having failed in the very foundation of her action." Id., 75 N.Y. at page 228.

9. 1901, 18 App.D.C. 149.

the wife was barred from obtaining custody unless she had "legal cause" to leave her husband and to refuse to return. Nor could one be found, for in this jurisdiction it had already been settled that in exercising its discretion in the matter of custody, "courts do not act to enforce the [adversary] rights of either parent, but to protect the interest and general welfare of the children."[10] And this principle has been applied both before and after Towson without regard to whether the issue of custody was "involved in a direct proceeding like this or as an incident of a suit for divorce."[11] For example, it was applied in the pre-Towson case of Wells v. Wells.[12] There, we upheld an award of custody to a wife as an incident of a divorce proceeding where, upon cross-bills, an absolute divorce had been granted to the husband. It was again applied, as we have already pointed out, in the pre-Towson habeas corpus case of Stickel v. Stickel.[13]

That the welfare of the child is the primary criterion in custody cases has been reaffirmed many times in this court since Towson was decided.[14] In one of these cases, we said:

"The question for the trial court is the welfare of the children. This consideration overrides all others, even where, unlike the present case, the proceeding is in habeas corpus. The rights of the parents, *in all cases*, must yield to the interest and welfare of the children. * * *

* * * * * *

"Although the present proceeding is in the name of the children, appellant's argument is pitched, largely, upon the adversary rights of the parents; * * *. We may as well recognize that such considerations are very unreal in the case of parents and children. * * * The important consideration is that when a court is confronted with a question of custody, it is required to act as parens patriae. Under such circumstances, children cannot be used as pawns in a game of legal chess to work out conceptions of status and property rights.

* * * * * *

"* * * In an even more recent case in habeas corpus, we said: 'For nearly half a century the established rule in this jurisdiction has been that the rights of the parent to the child are secondary to the welfare of the child. Its well-being, as we have said time and again, is the paramount consideration. Hence it is that, *in all cases such as this*, what is best for the child, rather than the natural right of the parent, is the controlling factor.'"[15]

We hold that Towson must be deemed overruled to the extent that it may be

---

10. Wells v. Wells, 1897, 11 App.D.C. 392, 395.

11. Stickel v. Stickel, 18 App.D.C. at page 151.

12. See note 10, supra.

13. See note 9, supra. See also Seeley v. Seeley, 1907, 30 App.D.C. 191, 193, certiorari denied, 1908, 209 U.S. 544, 28 S. Ct. 570, 52 L.Ed. 919; and Beall v. Bibb, 1902, 19 App.D.C. 311, 313.

14. See Langan v. Langan, 1945, 80 U.S. App.D.C. 189, 190, 193, 150 F.2d 979, 980, 983; Boone v. Boone, 1945, 80 U.S.App.D.C. 152, 153, 150 F.2d 153, 154; Holtsclaw v. Mercer, 1944, 79 U.S.App. D.C. 252, 145 F.2d 388; In re Adoption of a Minor, 1944, 79 U.S.App.D.C. 191, 199, 144 F.2d 644, 652, 156 A.L.R. 1001;

Cook v. Cook, 1943, 77 U.S.App.D.C. 388, 389–390, 135 F.2d 945, 946–947; Barker v. Albright, 1936, 66 App.D.C. 296, 297, 86 F.2d 852, 853; Sardo v. Villapiano, 1935, 65 App.D.C. 121, 122, 81 F.2d 255, 256; Warner v. Warner, 1928, 58 App.D.C. 34, 35, 24 F.2d 609, 610. Towson has been referred to only once by this court in connection with the question under discussion. That was in the Warner case where we did not construe Towson, but merely found it distinguishable and therefore inapplicable.

15. Boone v. Boone, 80 U.S.App.D.C. at pages 153–155, 150 F.2d at pages 154–156, quoting Holtsclaw v. Mercer, 79 U.S.App.D.C. 252, 145 F.2d 388. Emphasis supplied.

construed to be in conflict with the principle that in the matter of the custody of a child, the paramount consideration is the child's welfare and not the adversary rights of the parents.

■ The matter of an award of custody is entrusted to the discretion of the trial court and its action may not be disturbed on appeal except for a clear abuse of that discretion.[16] In exercising that discretion in the present case, the trial court relied, *inter alia*, upon its finding that Mrs. Bartlett had "reasonable cause" to leave her husband. We read this to mean such cause as would support a decree for separate maintenance or divorce in her favor because only such cause is recognized by law. So read, this finding determines the adversary rights of the parents. Hence it is not, under the governing principles discussed above, essential as a basis for an award of custody to Mrs. Bartlett. If, therefore, this finding were supported by the evidence, we could treat it as mere surplusage and thereupon affirm the trial court's award of custody. But a majority of my brethren believes the finding is clearly erroneous. They are unwilling to declare as a matter of law that the circumstances depicted in this record which led Mrs. Bartlett to leave her husband, irritating as they may have been to a person of her disposition, would constitute sufficient grounds for a decree of separate maintenance or divorce in her favor. Since it is not feasible to determine the extent to which the trial court's discretion was influenced by the finding held erroneous, the case must be remanded to the trial court for its reconsideration of the custody issue.

■ In remanding this case upon this issue, we are not to be understood as directing or even favoring an award other than to the child's mother.[17] We leave the matter of the award to the discretion of the trial court. We merely direct that, in exercising this discretion, the trial court eliminate the finding that Mrs. Bartlett had "reasonable cause" to leave her husband.[18] It is plain, however, that any findings on matters underlying the destruction of their home would be relevant for whatever light they may shed on the comparative fitness of the parties to care properly for the child.

■ Mr. Bartlett also contends that the trial court had no jurisdiction to order him to pay for the support of his child. He relies upon Towson for the proposition that the enactment of our maintenance statute[19] did not change the common law rule that a father has the

16. Steele v. Steele, 1948, 83 U.S.App.D.C. 254, 256, 168 F.2d 562, 564; Boone v. Boone, 80 U.S.App.D.C. at pages 153–154, 150 F.2d at pages 154–155; Warner v. Warner, 58 App.D.C. at page 35, 24 F.2d at page 610; Wells v. Wells, 11 App. D.C. at page 395.

17. " * * * the presumption [is] that small children are better off with their mother * * *." Boone v. Boone, 80 U.S.App.D.C. at page 154, 150 F.2d at page 155.

18. The trial court, of course, "retain[s] a continuing jurisdiction" as regards "the custody and maintenance" of the child. Emrich v. McNeil, 1942, 75 U.S.App.D.C. 307, 310, 126 F.2d 841, 844, 146 A.L.R. 1146. See also Trotter v. Trotter, 1950, 87 U.S App.D.C. 213, 183 F.2d 997; and Steele v. Steele, 1948, 83 U.S.App.D.C. 254, 168 F.2d 562. Thus it may, upon a proper showing of changed circumstances, alter the terms and conditions of any decree. See Elkins v. Elkins, 1924,

55 App.D.C. 9, 11, 299 F. 690, 693, and cases cited therein; and Church v. Church, 1921, 50 App.D.C. 237, 239, 270 F. 359, 361.

19. 16 D.C.Code § 415 (1951) provides: "Whenever any husband shall fail or refuse to maintain his wife and minor children, if any, although able so to do, the court, on application of the wife, pendente lite and permanently, may decree that he shall pay her, periodically, such sums as would be allowed to her as pendente lite or permanent alimony in case of divorce for the maintenance of herself and the minor children, if any, committed to her care by the court, and the payment thereof may be enforced in the same manner as directed in regard to payment of permanent alimony." This section, enacted in its present form in 1949, 63 Stat. 213, is, as indicated in note 4, supra (identical in all pertinent respects with D.C.Code § 980, enacted in 1901.

right to maintain his children in his own home in discharging his obligation to support them. It is not clear whether that proposition or the wife's delictum was the controlling factor for the denial of maintenance for the child in Towson. We think it is clear, however, from the views expressed by this court since Towson that neither factor can now be considered as controlling.[20] These views plainly indicate that, as in the matter of custody, the matter of maintenance is entrusted to the discretion of the trial court, in the exercise of which the controlling factor is the child's welfare.[21] The "child's claim to paternal support, unlike the claim of the wife, is not affected by the merits of controversies, however serious, between the spouses." [22]

We think, however, that our remand of the custody issue for reconsideration requires us, as a practical matter, also to remand the maintenance issue for the same purpose since the resolution of one may well bear upon the disposition of the other.

Chief Judge Stephens, Judges Edgerton, Prettyman, Washington and Dana-

her concur in this opinion. Judge Prettyman has also stated some views separately in an opinion in which Chief Judge Stephens joins.

Reversed and remanded for reconsideration in accordance with this opinion.

PRETTYMAN, Circuit Judge, with whom STEPHENS, Chief Judge, joins (concurring).

We are of the majority to whom our brother BAZELON refers as believing the finding that Mrs. Bartlett had reasonable cause to leave her husband was clearly erroneous. We concur in his opinion but are impelled to a further brief statement on this point.

This case concerns the custody of a child. Translated into language applicable to that problem, the finding that the wife had reasonable cause to leave her husband means that this wife had reasonable cause to break up the family home, the child's home. The record does not support such a finding. The reasons advanced by the wife for leaving the home were the sort of irritations and difficul-

---

20. Even prior to our decision in Towson, this court, in Wedderburn v. Wedderburn, 1917, 46 App.D.C. 149, refused to recognize the wife's delictum as barring a maintenance award for the child. That case involved a maintenance award for a child granted by the District Court prior to a Virginia divorce decree obtained by the husband on the grounds of desertion. We affirmed the District Court's denial of the husband's motion, based upon the wife's delictum, to set aside the maintenance award.

21. See Warner v. Warner, 1928, 58 App. D.C. 34, 24 F.2d 609 (Husband required to pay maintenance for child awarded to mother even though his successful bill for divorce had sought custody of child). Compare with Emrich v. McNeil, 1942, 75 U.S.App.D.C. 307, 310, 126 F.2d 841, 844, 146 A.L.R. 1146 ("The child's claim against its father for maintenance is not subsidiary to that of the mother.") (Dismissal of wife's Municipal Court suit

to recover sum due for maintenance of child upheld on basis that District Court, which had entered original order for maintenance of child, had exclusive jurisdiction); and Maschauer v. Downs, 1923, 53 App.D.C. 142, 145, 289 F. 540, 543, 32 A.L.R. 1461 ("We do not think the conduct of the mother, if improper, should be charged to [the children]. If the father, knowing that they were destitute, refused to support them, and the plaintiff supplied them with necessaries on his credit, he is liable.") (Third party suit against husband for necessaries supplied to wife and children; judgment on pleadings in favor of plaintiff reversed and case sent back for new trial on issues of fact).

22. Howard v. Howard, 1940, 72 App.D.C. 145, 146–147, 112 F.2d 44, 45–46 (Trial court denied temporary maintenance to wife for herself and child; reversed in respect of maintenance for child).

ties which not infrequently beset normal, decent human beings attempting to live together under one roof, especially two people in marital status. She thought him unduly critical of her, unnecessarily petulant at times, needlessly concerned over domestic expenditures, unsatisfactory in the marital relationship, and so on. They may have been somewhat mismated. She was young, liked people, was interested in what she called pleasures, such as trips, etc. He was taciturn, ungregarious, mindful of the needs of a rainy day, wanted to own a house. Perhaps these characteristics may produce the sort of unhappiness which is an acceptable social, although not legal, reason for two people to cease to live together. But we are here concerned with a sterner problem. The welfare of a child is involved. A basic public policy plays a part. The welfare of a child lies in a home with two normal, decent parents. Where there are such parents and a home, public policy dictates that the family unit be maintained. That a price must be paid for it by one or both parents is of no concern from the standpoint of the child. The courts should not, and in our view must not, declare as a matter of law or as a conclusion of fact that circumstances such as those depicted in this record constitute reasonable cause for the destruction of such a home. The welfare of the child dictates otherwise.

The finding in question was one of the two which the District Court specifically directed counsel to include in the draft to be submitted for court approval. So it appears that the court gave great weight to it. It is in order that the doctrine implicit in that finding may not stand as a ruling in respect to awards of custody in this jurisdiction that we are compelled, as we see it, to vacate the judgment and remand the case for reconsideration of the award.

We agree that in determining which parent is to be custodian of the child it is not necessary to decide which of the parents is to blame for the destruction of the home. Expressed in other words, it is not necessary to find whether there was or was not reasonable cause, in a strictly legal sense, for the departing spouse to leave. These are the adversary rights of the parents of which Judge BAZELON writes, and they are, as he says, immaterial to custodianship. We are not so sure that the District Court meant "reasonable cause" in that strict legal sense; it may have meant a colloquial, or social, reasonable cause. But we agree with the others of the majority of this court that the law knows no reasonable cause for the separation of married couples except the causes specified in the statutes pertaining to divorce and separation, and we should not attempt to set up a new category of reasonable causes to use as criteria in custody cases. At the same time we agree that the circumstances which in fact generate a decision on the part of one spouse to leave the other may be relevant and material to the relative fitness of the parents to take proper care of the child. For the purpose of determining fitness for custodianship, such circumstances may be considered. To us the important consideration in this phase of this case is to make clear and certain that in this jurisdiction incidents and circumstances such as those depicted here do not constitute reasonable cause in any sense of the term for the destruction of a child's home.

**WILBUR K. MILLER,** Circuit Judge, with whom CLARK, Circuit Judge, joins (concurring in part and dissenting in part).

I do not regard the Towson case as in conflict with the principle that in a custody case the child's welfare is the controlling consideration. Here, as in that case, the wife left her husband without reasonable cause and took his child with her. Thus she destroyed the home her husband had provided for his family. That home, it appears, is as fitting for the child's upbringing as the one to which she repaired. I think the wife's

unwarranted desertion tips the balance against her on the custody issue, which should be considered on an adversary basis since the child will apparently be well cared for by either parent.

I would reverse and direct the entry of a judgment awarding custody to the husband.

FAHY, Circuit Judge (dissenting as to the manner in which the question of custody is disposed of).

I agree that notwithstanding the Towson case the District Court was empowered to award custody of the child to the wife, but I think that in part the power was erroneously exercised and that we should so decide. Neither parent is shown to be unfit to have the child's custody. The home of each, available to the child, is a good one. To use the words of the trial judge, the father's home with his own parents is "a beautiful home". In these circumstances the child, now approaching the age of four, should have the companionship and care of both his father and mother to a greater degree than the decree permits. The paramount duty of a court to make such disposition of the problem as is thought to be conducive to the welfare of the child is to be carried out ordinarily within the bounds of the family circle. The court does not suggest a departure from this principle; but the family circle in such a case should include the home with the father as well as that with the mother. A division of custody until or unless under the continuing supervision of the District Court it should prove unwise, is as likely to be beneficial to the child in this case as is exclusive custody with the mother. I think the record before us would well justify this court in directing now that the boy be permitted to be in his father's custody as of right during substantial periods of time. I would require this, though I would not, as would my brethren Judges Clark and Miller, award entire custody to the father.