Barbara H. RZESZOTARSKI, Appellant,

v.

Waclaw RZESZOTARSKI, Appellee.

Nos. 5901, 6122.

District of Columbia Court of Appeals.

Argued May 9, 1972.

Decided Oct. 31, 1972.

Walter R. Choroszej, Washington, D. C., for appellant.

Alvin B. Davis, with whom James J. Bierbower, and A. Lee Fentress, Washington, D. C., were on brief, for appellee.

Before KELLY, FICKLING and NE-BEKER, Associate Judges.

NEBEKER, Associate Judge:

These consolidated appeals are brought by the wife (1) from a judgment granting an absolute divorce to the husband on grounds of voluntary separation and awarding him custody of their son, Piotr (Peter); and (2) from a prior order granting pendente lite visitation privileges to the wife.[1] The wife's major contentions on appeal relate to issues involving jurisdiction of the court, correctness of the finding of "voluntary separation", the effect of a Polish decree depriving the husband of parental powers, and an abuse of discretion in awarding custody of Peter to the husband.

The husband and wife were both born and reared in Poland. When married there in 1958, both were chemistry students at a Polish university. Both have now obtained graduate degrees and have been employed in the scientific field. The employment and educational commitments of the husband and wife often necessitated their living apart and required that their children (Peter, born in 1963, and Agnieszka (Agnes) born in 1966) live with and be cared for by their maternal grandparents in a Polish city in which neither parent resided.

In January 1967, the husband came to the United States under a cultural-scientific exchange program for two years. He testified that his wife said she did not care whether he returned to Poland or not and that she was indifferent as to whether he extended his stay. It was understood that his stay here would be a temporary one and that during its tenure each would be self-supporting and that she would support the children.

About two or three months after arriving in the United States and while living in California, the husband decided that he no longer desired to return to Poland. While in California he also met a woman whom he saw socially and with whom he later fell in love. In March 1968, the husband signed an affidavit wherein he invited his son, Peter, to the United States for the purpose of visitation, and in order that the child might learn the English language. The wife consented to the trip, thinking that the child and her husband would be returning to Poland at the end of his exchange program. In May 1968, Peter arrived in the United States. A few months later in August, the husband advised his wife by letter that he would seek a divorce and that the child would remain in the United States. As for the wife's reply to this letter, the husband's testimony, which was not refuted at trial, was: "I got a letter saying that she doesn't care whether she is married to me or not, but I can obtain divorce only if I return child to Poland." (Tr. 39.)[2] Shortly thereafter, the husband moved from California to the District of Columbia where he had been able to obtain employment.

Although the wife was unable to obtain the residential address of the husband for several months after his move to the Washington area, she was able to obtain his business address from the husband's former employer on December 4, 1968. No efforts were initially made by the wife toward reconciliation as she thought that after the husband's exchange program termi-

1. The wife appealed from a trial court order alleging that the pendente lite visitation privileges granted therein were prejudicial to the preparation of her case. Consolidation of that appeal (No. 5901) and the appeal from the final order of the trial court (No. 6122) was ordered by this court.

2. The record indicates that both parties conceded the existence of the wife's letter of reply. Counsel for the wife sought to admit into evidence copies of letters written by the wife, but counsel for the husband opposed indicating that he would introduce the original letters. However, no letters from the wife were introduced into evidence.

nated in January 1969, he would have to return to Poland.

In Washington, the husband and Peter resided in the home of the woman he had met in California, and who was at that time separated from her spouse. She has since been divorced and she and appellee plan to marry once he is free to do so. Pending final resolution of this case, they have been forced to live apart.

In February 1969, the wife, realizing that her husband and son were not returning to Poland, and concerned about obtaining custody of Peter, filed a lawsuit in the county court of Opole, Poland, which sought to deprive the husband of his parental powers over both Peter and Agnes. Service of process on the husband was accomplished by registered mail through the Polish consul here. On October 7, 1969, the Polish court ordered that the husband's parental powers over Agnes be terminated. The ultimate resolution of whether the Polish courts had a basis to determine the husband's parental powers over Peter was decided on extraordinary appeal by the Supreme Court of Poland. On October 14, 1969, a decree was issued which held that because Peter's last place of domicile as determined by the will of *both* parents was Poland, the Polish courts had jurisdiction to determine the parental-powers (or custody) issue relating to Peter. The court looked not at the adversary rights of the parents, but at the welfare of the child in making its determination that the husband should be deprived of his parental powers not only over Agnes but also over Peter. No efforts were made to enforce the Polish court's decision in the United States as no treaty exists between Poland and this country which provides for reciprocal enforcement of such judicial determinations.

On April 16, 1970, a complaint was filed in the trial court of the District of Columbia by the husband for divorce on the grounds of voluntary separation and for custody of his son, Peter. The wife's answer, filed on July 13, 1970, denied the voluntariness of the separation but in counterclaim sought the custody of Peter as well as reasonable support for both children and separate maintenance for herself. She later came to the District of Columbia and appeared in the trial court proceedings. Thereafter, answers to interrogatories revealed for the first time that the wife was amenable to reconciliation. The trial court granted the divorce and awarded custody of Peter to the husband.

In these appeals, the wife contends: (1) that the husband was not domiciled in the District of Columbia and could not invoke the jurisdiction of the trial court; (2) that a letter from the Department of State under its impressed seal was erroneously admitted into evidence; (3) that the granting of divorce to the husband was against public policy because of his abandonment of the wife and his adulterous conduct; (4) that the trial court erred in not giving controlling weight to the Polish court decree; (5) that under the evidence adduced at trial and the legal presumptions relating to the fitness of a mother and the unfitness of an adulterous parent, the determination of custody was error; (6) that the denial of alimony was error and that the award of support for Agnes was too low; and (7) that the limited visitation rights granted her by the trial court, pendente lite, prejudiced the preparation of her case as it related to the issue of custody. Upon consideration of all these issues, we affirm.

I

█ The jurisdictional issue presents the question whether the husband was a "bona fide resident of the District of Columbia for at least one year next preceding the commencement of the action." D.C. Code 1967, § 16–902. This bona fide residency requirement of § 16–902 has been construed to mean "domicile".[3] The re-

---

3. Rogers v. Rogers, 76 U.S.App.D.C. 297, 130 F.2d 905 (1942); Heater v. Heater, D.C.Mun.App., 155 A.2d 523 (1959); Jones v. Jones, D.C.Mun.App., 136 A.2d 580 (1957).

quirements for establishing domicile are: "(1) physical presence, and (2) an intent to abandon the former domicile and remain here for *an indefinite period of time*; a new domicile comes into being when the two elements coexist. . . ." Heater v. Heater, D.C.Mun.App., 155 A.2d 523, 524 (1959) (emphasis in original). The "intent" aspect of domicile has been further described in Jones v. Jones, D.C.Mun. App., 136 A.2d 580 (1957), in the following terms:

"In defining the *animus manendi* necessary to establish domicile, the trial court held that appellant must have had a 'fixed intent to remain here permanently.' This reflects the English doctrine of permanence which has long been held inapplicable in this country. The American test of intent is generally spelled out in terms indicating something less than permanent habitation, i. e., an intent to remain for an indefinite future time or, as sometimes stated in the negative, the absence of any intention to go elsewhere. . . ." [*Id.* at 582; footnotes omitted.]

The husband in the instant case had lived in the District of Columbia for approximately 16 months prior to his filing the complaint for divorce. As to the matter of intent, the wife contends that it was impossible for the husband to form an intent to be domiciled in the United States because he was here under the cultural-scientific exchange program and could not remain for an indefinite future time. She also observes that after expiration of the allowed period of time, any intent on the part of her husband to remain in the United States was forced upon him by his fears of adverse political reaction or possible criminal charges if he returned to Poland. The wife further contends that the husband's "lack of status" with the Immigra-

tion and Naturalization authorities (wherein he may be subject to deportation) prevents the husband from acquiring a domicile in the United States.

A similar contention was resolved by this court in Alves v. Alves, D.C.App., 262 A.2d 111 (1970). In *Alves*, the wife of a British citizen who was in the District of Columbia contended that because her husband was living here at the grace of the British and United States governments and had entered the United States as a non-immigrant, he was precluded from becoming domiciled in the District of Columbia. However, this court looked beyond the husband's British citizenship and his non-immigrant status. The controlling factor of intent was expressed as follows:

"By intending to remain indefinitely in the District of Columbia appellee negatived a definite intent to return to Great Britain. As best it might be argued appellee had a floating intention to return to Great Britain conditioned upon an uncertain event—his dismissal from [his employment]—which event may never occur. But such a floating intention to return to Great Britain is not sufficient to require a holding that appellee was still domiciled in Great Britain. Only if appellee had a definite and fixed intention of returning to Great Britain could it be said he did not abandon his English domicile. There is no evidence to indicate appellee definitely intended to return to Great Britain but rather all the evidence leads to the conclusion that appellee intended to remain in the District of Columbia for an indefinite time. . . ." [*Id.* at 115–116; footnotes omitted.]

In light of *Alves*, we hold that the husband's temporary status and later "lack of status" under the immigration laws are irrelevant to the issue of domicile.[4] What

4. Without passing directly on the question of admissibility of the Department of State document under the Department's impressed seal, this contended error must be viewed as harmless since the relevance of that document and its possible damaging effect relate entirely to the question of the husband's status. *See* D.C.Code 1967, § 11–721(e) (Supp. V, 1972) (harmless error). We need not deal with

is determinative is the intent of the husband to remain in the District of Columbia for an indefinite time.

The record reveals that the husband testified that he had doubts about returning to Poland two or three months after his arrival in this country in California. He also made plans to seek permanent residency in the United States and to bring his son here. In the process of signing an affidavit inviting Peter to visit this country, the husband indicated an intent to return to Poland. However, there is abundant evidence to indicate a contrary intent and the affidavit was apparently signed to secure Peter's release from Poland and not to be declarative of the husband's intent on domicile.

■ After Peter's arrival, the husband notified his wife that he would seek a divorce and would keep Peter in America. From the record it appears that by the time the husband had written the August 1968 letter to his wife notifying her of the intended divorce, he had clearly manifested an intent to remain in the United States for an indefinite period of time. The husband's domicile was then established in the State of California. His actions in moving to the District of Columbia to take up employment and the enrolling of his son in school clearly indicate that he no longer desired to be domiciled in California or had any intention of returning to California. Domicile was thus established in the District of Columbia. As was stated in *Alves*, the husband's intent might be described as a floating intent or even contingent[5] upon being allowed to stay in the United States. However, this alone did not destroy the requisite intent to remain in the District of Columbia for an in-

definite period of time. It must therefore be concluded that the finding of residency under § 16-902 is supported by the record and relevant case law. The trial court thus had jurisdiction to fully determine the divorce action and its related matters. Seabrook v. Seabrook, D.C.App., 264 A.2d 311, 314–315 (1970).

II

■ The wife also urges this court to hold that the granting of a divorce on the grounds of voluntary separation was against public policy. Her underlying reasoning is grounded in the belief that it is inequitable to grant a divorce to the husband who has abandoned his family and committed adultery with another woman. While these facts may form a persuasive basis for divorce if brought by the wife (either directly or by way of counterclaim),[6] they do not have any legal effect upon a suit for divorce brought by the husband on the theory of voluntary separation if in fact the "voluntariness" of the separation can be successfully shown.

■ Under D.C.Code 1967, § 16-904(a), an absolute divorce may be granted when the husband and wife have been voluntarily separated from bed and board for one year without cohabitation. Although it is clear under the facts of this case that the initial separation of the parties was thought to be merely temporary and certainly not in contemplation of separation or divorce, this fact does not prevent the separation of the parties from becoming a "separation" for purposes of divorce. It has been held that:

"The nature of the separation at its inception is not determinative of its continuing character but is only evidence

---

this evidentiary issue because domicile is determined on the basis of intent, irrespective of status. Alves v. Alves, D.C. App., 262 A.2d 111, 114–115 (1970). *Compare* McGrath v. Kristensen, 340 U.S. 162, 175, 71 S.Ct. 224, 95 L.Ed. 173 (1950) (construing "residence" for domicile purposes as involving choice).

5. See Alves v. Alves *supra* note 4; and Heater v. Heater, *supra* note 3, regarding domiciliary intent which may be subject to change upon a future contingent event.

6. The wife's "counterclaim" only related to the matter of custody of Peter.

thereof, and if one spouse did not agree to the separation at the beginning, that spouse may thereafter affirmatively consent or silently acquiesce therein for the required period. . . . " [Henderson v. Henderson, D.C.App., 206 A.2d 267, 269 (1965).]

*See also* Martin v. Martin, 82 U.S.App.D. C. 40, 41, 160 F.2d 20, 21 (1947).

In the instant case, the husband, after living for some time in the United States, decided that he wished to remain here and that he no longer desired to be married to or live with his wife. His intention was communicated to his wife in a letter dated August 8, 1968, clearly showing the "voluntariness" of the separation on the part of the husband. Upon receipt of the letter, the wife had the option of (1) consenting to the marital separation (or silently acquiescing therein); or (2) manifesting a real desire to continue the marital status. *See* Bondurant v. Bondurant, D.C.App., 283 A.2d 26 (1971); Johnson v. Johnson, D.C.App., 221 A.2d 85 (1966); and Henderson v. Henderson, *supra*. At trial there was no showing of a manifest desire to continue the marital status during the critical period of separation. On the contrary, the husband stated, regarding his wife's response to the August letter, "I got a letter saying that she doesn't care whether she is married to me or not . . . . " This testimony was sufficient for the finding that the wife consented to the marital separation. Although she has sought to regain custody of her son, both in Poland and the United States, the record is void of any indication that the wife had at any time prior to her answers to interrogatories desired to reconcile marital differences or sought to continue the marital status. Un-

der these circumstances the trial court found:

"It is undoubted that on not one single occasion from December 4, 1968 and until her answer filed July 13, 1970 (in which she only denied the voluntariness of the initial separation, contending it was temporary but not permanent at that time) has she either requested Plaintiff in good faith to resume a marital relationship with her as husband and wife or has she manifested a serious intention to continue the marriage status." [Record at 224, citing Seabrook v. Seabrook, *supra*.]

The finding must therefore be sustained.

### III

■ The wife further contends that the award of custody was erroneous in that the trial court erred in not giving recognition and weight to the Polish Supreme Court's parental powers decree through principles of comity. The trial court's refusal to consider the Polish decree was proper because the prerequisites for recognition of a foreign decree cannot be found. Before a foreign judgment will be recognized through comity in this jurisdiction, the foreign court's jurisdictional basis for entertaining the suit must be analyzed to determine whether the judgment is valid. The jurisdictional standards to be applied are those of this forum, as recognition of a foreign judgment or decree can only be based upon judicial action which comports with our own notions of due process of law.[7]

■ The various grounds for obtaining a proper jurisdictional basis for maintain-

---

7. "American writers agree that our own courts 'require for recognition of the legal effect of foreign judicial proceedings that the foreign courts have jurisdiction, not as measured by the standards abroad but as measured by their own conception of what falls within the scope of permissible exercise of judicial power.' " Cherun

v. Frishman, 236 F.Supp. 292, 296 (D.D. C.1964) (citing Stumberg, Conflicts of Law 66–67 (3d ed.); Reese, The Status in This Country of Judgments Rendered Abroad, 50 Colum.L.Rev. 783, 789; 3 Freeman on Judgments, § 1484). *See generally* Restatement (Second) of Conflict of Laws §§ 92(a) and 98 (1971).

ing an action seeking custody in the District of Columbia have been described in Schiller v. Schiller, D.C.App., 194 A.2d 665 (1963). There the court dealt with a husband and wife who were both personally before the court but who were domiciled in Maryland as were their children. In summarizing the underlying jurisdictional policies relating to custody determinations in the District of Columbia, the court said:

"Judicial pronouncements in the District of Columbia indicate a willingness of the courts to weigh and consider the welfare of any child who lives within its territorial limits either temporarily or as a domiciliary resident with a parent or other relative. In the case before us the only possible basis for jurisdiction over the minor children is the personal jurisdiction over the contesting parents, both Maryland residents. The decisions of our courts give no clear-cut guide as to whether this is a sufficient nexus to give the trial court jurisdiction to award custody of nonresident children. . . .

"Viewed in the light of what is for the best interests of the children and their welfare and the admitted nonresidence of all parties, we think the trial court properly declined to award custody. Practical considerations dictate such a decision by reason of the inherent difficulties in the enforcement of any custody order, and in any effort of a court of the District of Columbia to act as *parens patriae* for these children, it could not assume realistic control and care. . . ." [*Id.* at 667; footnotes omitted.]

Thus, in the District of Columbia, courts usually require that a child be domiciled or temporarily present within the jurisdiction before custody can be determined. An exception to this rule may be found where both parents of the child are parties before the court in divorce litigation,[8] but our divorce laws require a certain nexus of the parties to the District of Columbia. *See*

D.C.Code 1967, § 16–902. Even in such divorce litigation it is necessary that both parties appear before the court and participate in the proceedings. Oxley v. Oxley, 81 U.S.C.App.D.C. 346, 347, 159 F.2d 10, 11 (1946). *Cf.* May v. Anderson, 345 U.S. 528, 533–534, 73 S.Ct. 840, 97 L.Ed. 1221 (1953). *But see* Kraft v. Kraft, D.C.Mun. App., 155 A.2d 910, 913 (1959) (recognizing the validity of a Maryland judgment holding that domicile, actual residency in the jurisdiction, and notice of the divorce suit are sufficient enough to establish "personal jurisdiction" over an absent party thereby providing a basis for a collateral custody determination).

▇ The decree of the Polish Supreme Court did not determine any marital rights but dealt solely with the issue of parental powers or custody. The court purported to find that Peter was domiciled in Poland in that the last place where Peter resided under the joint intent of both parents was Poland. However, the rule in the United States is that when parents are separated, the child, for jurisdictional purposes, takes the domicile of the parent with whom he resides. Oxley v. Oxley, *supra*, 81 U.S. App.D.C. at 347, 159 F.2d 10; Restatement (Second) of Conflict of Laws § 22(1) and comment d. at 89 (1971). Because Peter was domiciled in the United States at the time the Polish court proceedings were held, we do not recognize a jurisdictional basis underlying the Polish decree. The Polish court's assertion of jurisdiction to entertain the action seeking custody does not comport with our jurisdictional prerequisites. While the Polish courts may have perfected service of process on the husband, he never partipated in the litigation which purportedly determined his parental rights. The Polish court's decision was in the nature of an *ex parte* determination and we do not view it as controlling here since both parties appeared before the trial court and litigated fully the custody question involved.

8. Alves v. Alves, *supra* note 4, 262 A.2d at 116–117.

 Moreover, our courts have held that foreign custody decrees are not in the nature of final determinations and are continually open to revision in accordance with the best interests of the children as the facts may dictate at the present time. Langan v. Langan, 80 U.S.App.D.C. 189, 192–193, 150 F.2d 979, 982–983 (1945); Boone v. Boone, 80 U.S.App.D.C. 152, 153–154, 150 F.2d 153, 154–155 (1945); Cook v. Cook, 77 U.S.App.D.C. 388, 390, 135 F.2d 945, 947 (1943). Comity must give way to the realistic interests of the state in exercising *parens patriae* jurisdiction over the child—relying on both past and present facts and looking with an eye toward the best interests of the child for the future.[9] *See* Coles v. Coles, D.C.App., 204 A.2d 330, 332 (1964). In acting independently of the Polish decree the trial court committed no error.

## IV

 The wife also questions the award of Peter's custody to the husband in light of the presumptions concerning the assumed fitness of a mother and assumed unfitness of an adulterous parent. Although it is recognized that children of tender years are better off with their mothers, absent a finding that the mother is unfit,[10] this presumption cannot be viewed as controlling but merely as a usually persuasive factor relating to the issue of custody. Dorsett v. Dorsett, D.C. App., 281 A.2d 290, 292 (1971); Coles v. Coles, *supra* 204 A.2d at 332. Likewise,

the presumption of unfitness of an adulterous parent should not be viewed as an absolute bar to an award of custody to that parent. Dixon v. Dixon, D.C.App., 190 A. 2d 652, 654 (1963). All of the facts of each individual case must be considered by the trial judge as they may be relevant to the best interest and welfare of the child and not the adversary rights of the parents. "The important consideration is that when a court is confronted with a question of custody, it is required to act as parens patriae. Under such circumstances, children cannot be used as pawns in a game of legal chess to work out conceptions of status and property rights." Boone v. Boone, *supra*, 80 U.S. App.D.C. at 154, 150 F.2d at 155 (footnotes omitted). *See also* Bartlett v. Bartlett, 94 U.S.App.D.C. 190, 221 F.2d 508 (1954). This principle has found more recent application in this court in Coles v. Coles, *supra*, wherein it was said:

"[M]ost jurisdictions, including this jurisdiction, have accepted [the] pronouncement that in child custody cases: 'Above all things, the paramount consideration is, what will promote the welfare of the child?' . . ." [*Id.* 204 A.2d at 331; footnote omitted.]

 The record in the case before us shows extensive evidence presented by both parties regarding a determination of what would be in the best interest of the child. Both parties had obtained expert witnesses who gave psychiatric and psychological testimony as to Peter's emotional welfare.[11]

9. The Polish courts had no factual input from the father and son as to actual conditions and adjustments made in the United States—the court looking only at earlier years of Polish life. The record does not show that the Polish court had available to it the psychiatric and psychological testimony that was produced in the Superior Court. At the time the Superior Court decided the issue, Peter had been in the United States for three years. At the time of this appeal, he has spent nearly half of his life here—the more formative half in terms of his de-

veloping relationship with society and his peers.

10. Boone v. Boone, 80 U.S.App.D.C. 152, 154, 150 F.2d 153, 155 (1945); Dorsett v. Dorsett, D.C.App., 281 A.2d 290, 292 (1971).

11. In light of the evidence presented in the trial court by the wife both as to the actual conditions surrounding her son's custody here with the husband and as to psychological evaluation, her contention of prejudice in developing her case resulting from limited pendente lite vis-

Testimony also developed facts as to the realistic possibilities of the noncustodial parent effectuating visitation rights depending on which parent obtained custody.[12] It appears from the record that the determination made regarding custody was not without support.[13]

Under these circumstances we must abide by the determination made by the trial court as the law will only dictate reversal upon a finding of manifest abuse of discretion. Dorsett v. Dorsett, *supra*; Wells v. Wells, 11 App.D.C. 392, 395 (1897). The leading case in this jurisdiction dealing with judicial discretion in custody matters observes:

"Out of a maze of conflicting testimony, usually including what one court called 'a tolerable amount of perjury,' the judge must make a decision which will inevitably affect materially the future life of an innocent child. In making his decision the judge can obtain little help from precedents or general principles. Each case stands alone. After attempting to appraise and compare the personalities and capabilities of the two parents, the judge must endeavor to look into the future and decide that the child's best interests will be served if committed to the custody of the father or mother. He starts with the premise, as did the trial judge here, that the best interests of the child would be served by living in a united home with the affection, companionship and care of both father and mother, but that possibility has been eliminated before the case reaches the judge. So, the question for him is what is best for the child within the limitations presented. When the judge makes his decision, he has no assurance that his decision is the right one. He can only hope that he is right. He realizes that another equally able and conscientious judge might have arrived at a different decision on the same evidence." [Coles v. Coles, *supra*, 204 A.2d at 331–332; footnote omitted.]

In light of the record and the applicable law, we find no abuse of discretion.

## V

An abuse of discretion by the trial judge is also alleged by the wife relating to the issues of separate maintenance and support for herself and her daughter, Agnes. The trial court denied alimony for the wife but granted support for the daughter in the amount of 2,500 zlotys per month.

Under D.C.Code 1967, § 16–913, the court may award alimony to the wife when the husband has been successful in his application for divorce "if it seems just and proper." It has been stated:

"[T]he law does not compel an award of support to the wife but leaves it to the discretion of the trial judge whose judgment will not be disturbed except upon a clear showing of abuse. Whether an award should be made and the amount thereof are determined by various factors, including the conduct and the financial situation of the parties. . . ." [Payton v. Payton, D.C.App., 187 A.2d 899, 900 (1963).]

---

itation privileges does not appear to warrant reversal. This is the only remaining issue in appeal No. 5901.

12. This appears to be a consideration that the trial court relied on in light of the husband's possible inability to revisit Poland because of his expired stay in the United States. *Cf.* Paine v. Paine, D.C. App., 201 A.2d 20 (1964).

13. We are persuaded that any "unfitness" arising from an adulterous relationship which might surround the grant of custody to the husband was ameliorated by the trial court's order which stated:

"During this award of custody the Plaintiff be, and hereby is, enjoined and prohibited from sharing the same residence with ............, or associating with said person in the presence of the minor, Peter, at any time, unless and until a formal legal marriage status is established between the Plaintiff and ............, or until further Order of this Court whichever occurs earlier."

*See also* Quarles v. Quarles, 86 U.S.App. D.C. 41, 42, 179 F.2d 57, 58 (1949); Dawson v. Dawson, D.C.App., 193 A.2d 70 (1963).

█ In the case at bar, information as to the financial status of both parties was before the court. Likewise, the court was aware that the parties themselves had agreed to a temporary separation approximately four and one-half years earlier wherein each party would be self-supporting. Even after the husband's temporary visit developed into a prolonged stay in this country, it does not appear that the wife was in need of additional assistance to maintain herself. Under these circumstances, we find no abuse of discretion in the determination to deny support and maintenance to the wife.

We find the alleged error regarding the amount of support granted in behalf of the daughter, Agnes, to be without merit. In the wife's own testimony regarding her needs in providing for the support and care of Agnes, the wife testified that 2,500 zlotys per month would be sufficient. The trial court granted that amount. The wife's allegation on appeal that this may be as little as $32 (U.S.) depending on the exchange rate is unpersuasive as the trial court has ordered the husband to provide 2,500 zlotys per month to the wife for the support of Agnes regardless of the rate of exchange.

After reviewing the record in light of other alleged errors, including limited visitation privileges and lack of financial support during such visits,[14] we find no error and therefore

Affirm.

14. The trial court's order granted a 15-day visitation privilege to both the husband and the wife with respect to the child over which they had no custody. To accomplish this, the husband would provide round-trip air fare for both the wife and daughter, Agnes, from Poland to the United States for visitation privileges each year in July.

FICKLING, Associate Judge (dissenting):

It is clear from this record that the trial court abused its discretion when it granted the husband a divorce on the ground of voluntary separation and awarded him custody of the child, therefore, I dissent from Parts II and IV of the majority opinion.

The husband entered the United States from Poland in January 1967 under a cultural-scientific exchange program for two years. Within a few months he began an adulterous relationship with a married woman with whom he lived up to the date of trial of this case when the trial court ordered them to separate. The wife, living in Poland, had no knowledge of this relationship and expected that her husband would be required to return to Poland at the expiration of the two-year period, even though the husband informed her shortly after his arrival that he intended to remain in the United States and seek a divorce. The principle stated by the majority—that where there has been a desertion by one party, the other party, in order to defeat the claim of voluntariness, should manifest a real desire to continue the marital status —is not applicable under the facts of this case.[1] First, the wife had every reason to believe that her husband would be required to return to Poland and that the marital relation would resume. Secondly, I do not think the law envisioned that a deserted wife was expected to manifest a real desire to continue their marital status while the deserting husband was committing adultery and living with his paramour. This is a clear case of desertion which had not ripened into a voluntary separation.

I also think there was clear abuse of discretion when the trial court awarded custo-

1. The majority opinion merely recites the holding of Seabrook v. Seabrook, D.C. App., 264 A.2d 311 (1970), apparently disregarding the factual context of that case as well as this one. I, for one, do not believe the holding of that case can be viewed in the abstract and, examined in its factual setting, I do not find it controlling.

dy of the child to the husband.[2] It is conceded that the child, Piotr, as well as his younger sister, was being well cared for by his mother in Poland. Similarly, the husband admits that he obtained the child through planned trickery and deceit, which included forgery of documents and overt lies to his wife. It is also unchallenged that the wife is a fit person to have custody,[3] and it is clear from the record that the husband is unfit to have custody. The record reveals many reasons for a finding of unfitness; these are a few of the more serious ones. The husband: (1) removed the child from his mother by trick and subterfuge and then informed the wife that he was going to keep the child and seek a divorce; (2) committed perjury in official documents; (3) commenced an adulterous relationship with a married woman; (4) took his child to live in the house where the adulterous relationship was ongoing; (5) continued to live with his paramour until an order of the trial court forbade him to live there; (6) did not inform his wife of his home address or the address of the child's school until he had filed for divorce; (7) has either by accident or by design created hostility in the child towards his mother;[4] (8) referred under oath to his wife as the child's "biological" mother;[5] and (9) had his son refer to his paramour as "Mommy."[6]

The record also reveals the husband has deportation proceedings pending against him because he now has no status in the United States.[7]

The legal presumptions which are to guide trial courts in custody cases are well established in this jurisdiction and, while none of these presumptions are conclusive, they must be considered by the trial judge. There is the strong presumption that children of tender years should be awarded to the mother;[8] this presumption takes on even greater weight when the mother is a fit parent.[9] There is also the presumption that children of tender years should be together.[10] Finally, there is the strong presumption that an adulterous parent should not be awarded custody,[11] especially when it is conceded that the other parent is a fit guardian.[12] It is essential to note that in its extensive Opinion the trial court failed

---

2. Recognizing that the determination of the custody of a child is entrusted to the sound discretion of the trial judge, Coles v. Coles, D.C.App., 204 A.2d 330 (1964), it is noted that where there is a showing of manifest abuse of discretion this court must reverse such a determination. Dorsett v. Dorsett, D.C.App., 281 A.2d 290 (1971) ; Wells v. Wells, 11 App. D.C. 392 (1897).

3. See trial court's Opinion at 8.

4. In Coles v. Coles, *supra* note 2, Chief Judge Hood indicated that he placed great weight on the trial court's finding that:

 " 'The atmosphere must be as free of tensions, bitterness and hostility towards the other party as is possible under the circumstances. The child should be taught to love and respect each parent and the opportunities for its mind to be poisoned against either parent should be minimized.' " [*Id.* 204 A.2d at 331.]

 It is obvious in the instant case that the husband's actions were calculated to deprive the mother not only of the possession of her son but also of his affection.

5. *Id.*

6. *Id.*

7. These proceedings have been at least temporarily suspended.

8. Boone v. Boone, 80 U.S.App.D.C. 152, 150 F.2d 153 (1945) ; Dorsett v. Dorsett, *supra* note 2.

9. Custody is awarded to the mother occasionally even where it is shown that she committed adultery. Jay v. Jay, D.C. App., 212 A.2d 331 (1965). Again, it is noted that the husband in this case admits that his wife is a fit parent. *Supra* note 3.

10. See Annot., 98 A.L.R.2d 926 (1964).

11. Dixon v. Dixon, D.C.App., 190 A.2d 652 (1963).

12. *See* Schwier v. Schwier, D.C.App., 207 A.2d 115 (1965) ; Dixon v. Dixon, *supra* note 11; Opinion of trial court, *supra* note 3.

to even *mention any* of these presumptions; thus it is impossible to determine to what extent, if any, the court considered them as it must.

I have no doubt on this record that if the wife had been a citizen of the United States and a resident of any one of the states, she would have been awarded custody.

I would reverse the judgment with instructions to vacate the divorce decree and hold a new hearing to determine the custody of the child, Piotr, in light of my opinion. I therefore respectfully dissent.